United States Court of Appeals,

Eleventh Circuit.

No. 93-9345.

Robin Joy SHAHAR, Plaintiff-Appellant,

v.

Michael J. BOWERS, individually and Thurbert E. Baker, in his official capacity as Attorney General of the State of Georgia, Defendants-Appellants.

Aug. 1, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (NO. 1:91-CV-2397-RCF), Richard C. Freeman, Senior District Judge.

Before HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges, and GODBOLD and KRAVITCH, Senior Circuit Judges.

BY THE COURT:

This case is before the court on Plaintiff-Appellant's petition for rehearing and on her motion to supplement the record or for a remand to do so.

MOTION TO SUPPLEMENT

Ms. Shahar's petition for rehearing relies, in part, on two recent newspaper articles reporting that former Attorney General Michael J. Bowers has admitted to having an adulterous affair in the past with a woman employed in the Department of Law. She requests that this information become part of the record in this case by judicial notice or by remand to the district court for discovery. Defendants-Appellees, stressing arguments of finality, irrelevance and estoppel, argue that the motion to supplement or to remand should be denied. The motion to supplement the record or to remand is DENIED.

Although we have inherent equitable power to supplement the record with information not reviewed by the district court, "[s]uch authority is rarely exercised." *Ross v. Kemp,* 785 F.2d 1467, 1474 (11th Cir.1986). The reason for this rule is that the district courts are the courts in which cases are to be litigated and decided initially.

While we have the authority to supplement a record even after we have rendered both a panel opinion and then an *en banc* opinion on a case, the law's strong interest in finality dictates that supplementation of the record at such a late stage would be an especially extraordinary event and would require the clearest showing of just need to warrant the supplementation.[1] A review of the present record in this case shows that no strong equities favor supplementing the record at this time.

Review of the present record reflects that Ms. Shahar, in the district court, had the opportunity to pursue discovery on the question of whether or not lawyers in the Department of Law—including the Attorney General—had committed adultery. She did not press the matter, however. Instead, the parties entered into an agreement[2] in district court which limited the efforts of both sides to discover information about the sexual histories of the specific people involved in this litigation.

Pursuant to this agreement, the Attorney General stated that he, on the date that he withdrew the offer to her of employment, had no specific knowledge of any sexual conduct of Ms. Shahar and that his decision to withdraw the offer of employment was based on no act of sexual conduct on Ms. Shahar's part. In turn, Ms. Shahar—who has had the advice of counsel throughout this case—agreed to forego having the Attorney General respond to written interrogatories which had requested the names of any law department employees believed by the Attorney General to have engaged in

---

[1] An appeal is the review of the final judgment of the district court. *See* 28 U.S.C. § 1291 (Final Decision of District Court). When the district court enters its final judgment on a case, the evidence is closed; and the record (that is, the factual basis of the case) for appeal is established. At no time when a case is on appeal is adding information to the record—information that was never before the district court—usual and favored by the law. Therefore, that the information which Ms. Shahar wants us to add to the record now would have been allowed in earlier—before we had announced our en banc opinion—is by no means certain; we need not decide that issue because that issue is not before us.

[2] The Attorney General seemingly never put his signature on the agreement; the record, however, reflects that Mr. Bowers' deposition testimony is in conformity with the agreement, *see* Bowers Dep. at 67-69, the Motion for Summary Judgment filed by the Attorney General in the district court referenced the agreement, *see* Defendant's Motion for Summary Judgment at 15-16, and we are cited to no act of the Attorney General's office which seems inconsistent with the agreement, although the Attorney General did argue issues of public perception and of appearances on the matter of sodomy and "married" homosexuals in general.

sodomy or adultery.[3]  The stipulation worked to protect *both* sides in this litigation from additional trouble, including intrusions into their personal histories, as this case churned through the district court.

But this point is the decisive one:  Given that Ms. Shahar, in the district court, made no motions to compel the discovery of the names of law department employees who had engaged in adultery, we cannot say that the information about Mr. Bowers which she seeks to inject into the case now—almost six years after she filed her lawsuit and more than three years after the district court ruled against her—was information which she could not have discovered with due diligence years ago.  Because Ms. Shahar did not diligently seek out this information when the information could have been regularly considered by the district court and then by the court of appeals, no strong equities favor her request that we take the extraordinary step of supplementing the record at this late moment.

Parties to lawsuits often agree to limit discovery to avoid extra costs or embarrassment, or one side just chooses to abandon some line of discovery as more trouble than it is worth.  These kinds of decisions are strategic and routine.  A party's strategic decisions for litigation are to a great extent based on conjectures about what future course will be most favorable to the party;  with hindsight, some of the conjectures turn out to be incorrect.  But to hold litigants to their strategic

---

[3]Never has Ms. Shahar said that her interrogatories in the district court were not broad enough to include the Attorney General's own conduct.  In fact, she tells us that the information that she advances about Bowers now is precisely the information that "he refused to discuss in discovery."  Petition for Rehearing and Motion to Supplement the Record or For Remand to Do So at 2. Particularly in the light of the correspondence between the parties when they were in the district court, we agree.  Although we think it is plain that Ms. Shahar did undertake discovery on the matters now at issue, whether she did so or not, she could have done so;  and this point is the main one.

decisions on how broadly or narrowly they wish to litigate is not unfair.[4] So, we will not remand this case for the parties to start over now.

In addition to the procedural bar, we point out that the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process. The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court. Courts can take notice of certain facts without formal proof but only where the fact in question is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

---

[4]Our colleagues, who dissent from the denial of the motion to supplement, quote one sentence from the Response to the motion. The sentence is accurately quoted. But the Response as a whole is about seven pages in length. Taken as a whole, the Response is no definite and unconditional stipulation by Appellees that the record should be supplemented now. *See, e.g.,* Response at 1 ("Both Mr. Baker and Mr. Bowers oppose Appellant's Motion for Rehearing and her Motion to Supplement the Record in this case with the Declaration of Michael Adams [containing the two newspaper articles]."); *Id.* at 2 ("The interests of finality alone would dictate that the motion to supplement should be denied.").

More important, however, is this point of law: The parties to an appeal cannot bind the court to supplement the record no matter how plainly they both stipulate that supplementation is all right with them. The appellate court has the duty to make the decision to supplement or not to supplement.

In some cases, the parties may, for their own reasons, be happy for litigation to continue or feel—perhaps for reasons that have little to do with the case or with the law—that some evidence should not be objected to by them. But the cases in this court are our business, too. An appellate court has the duty to consider wider circumstances than the parties' preferences or lack of objections. For example, it is vital that we see to it that litigation (including discovery disputes and compromises) in the district courts be taken seriously by the parties and that the litigation be conducted in an orderly way in accord with regular procedures and practices. We also have a duty to see to it that finality means something real in the federal courts.

Our duties require (even in cases with great, immediate attention from the public) not only that we must consider the case before us, but that we must keep our eyes fixed on the precedent we might make and on the conduct of the business—present and future—of the courts generally. While we decide one case at a time, we do so against a background of the law, that is, the set of principles which will regulate all cases. These simple, but high, concerns drive today's decision to prohibit the supplementation—after our court has ruled twice and long after the district court has ruled—of the record in this case.

4

ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

For example, the kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when the sun rises or sets; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958. Ms. Shahar asks us to take judicial notice of the conduct of one person, Michael J. Bowers; and she asks us to take judicial notice of conduct which is not his official conduct (an example of his official conduct which might be judicially noticed would be that he issued a particular official opinion on a certain date). She has shown us no case—and we have found none—where a federal court of appeals took judicial notice of the unofficial conduct of one person based upon newspaper accounts (or the person's campaign committee's press release) about that conduct.[5] We are not inclined to extend the doctrine of judicial notice as far as Plaintiff-Appellant asks us to take it.[6]

Apart from these other sufficient and independent reasons for declining to supplement the record, we also decline because—if the proposed supplemental information were to be added to the many other circumstances already in the case—we cannot readily say that the result of the case probably would be different from the 30 May result.

ON PETITION FOR REHEARING

---

[5]We stress that we are not asked merely to take judicial notice of the fact that the media has reported "X" or the fact that a press release says "X." We are asked to know "X."

The dissent mentions a statement "made by Mr. Bowers." The only pertinent statement before us which might be said to have been made by Mr. Bowers is a written press release on "Bowers for Governor" letterhead. The statement is unsworn, unsigned, and speaks neither of "adultery" nor of other sexual conduct; it does use words like "involved with" and "relationship." Whatever people in general may wish to infer for themselves from this release, the statement lays no foundation for a federal court's taking judicial notice that Mr. Bowers has committed adultery or fornication.

[6]We do not accept this proposition to be part of the law of evidence: that information—a "fact" which is an improper subject of judicial notice—automatically becomes a proper subject of judicial notice if no party objects to the "fact" and that, therefore, an appellate court is bound to take judicial notice of the "fact."

The petition for rehearing is DENIED.

BIRCH and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge, dissenting:

*Motion to Supplement the Record or for a Remand to Do So:*

We dissent from the court's denial of Ms. Shahar's motion to supplement the record. Mr. Bowers' public statement is relevant to whether his asserted fear of adverse public reaction to perceived sexual misconduct of persons in the Georgia Department of Law was a bona fide reason for terminating Shahar, and to whether he acted as a non-discriminatory decisionmaker in the Shahar matter.

Failure to seek discovery at the trial level is no bar to supplementing the record. The inquiry at the trial court stage concerned policy relating to employees of the Department, not the conduct of Mr. Bowers himself as head of the Department or his capacity as a decisionmaker concerning Shahar. Moreover, the discovery "agreement"[1] below is irrelevant to this motion to supplement. Shahar does not ask that she somehow be allowed to pursue discovery in contravention of the agreement. Bowers admitted publicly certain facts, less than one week after the decision of the en banc court was published. The case is still open, as it is subject to a petition for rehearing. *See* Fed. R.App. P. 40. Shahar asks that the court supplement the record with Bowers' admission. We see no difference between this situation and one where Bowers would have made his admission before the en banc decision issued. Surely, at that stage, Shahar's failure to pursue the new information below would have worked no bar to supplementing the record.

The majority contends that the equities are against Shahar to supplement the record at this late stage because she failed to discover the information about Bowers' affair in the district court. We submit that the majority should have, in balancing the equities, also considered the fact that Bowers waited until a few days after its decision issued before he made the information public. This timing, to say the least, is suspicious; especially considering that, despite his discovery agreement

---

[1]The record shows that the alleged agreement was never executed by the parties. We assume that there was an agreement to limit discovery for the purpose of this motion.

with Shahar, Bowers was able to argue in this court "issues of public perception and of appearances on the matter of sodomy and [ ]married[ ] homosexuals in general." Majority Order at 3 n.1. Not only was Bowers able to argue that point, but he also was able to argue that Shahar could not function as a trustworthy member of his staff because she likely had a conflict of interest with respect to Georgia's sodomy laws. Considering that Bowers admits that, perhaps at the very time he fired Shahar, he also was breaking Georgia's adultery and fornication laws, his justification is entitled to no weight. At the very least, Bowers' justification evinces discrimination against Shahar solely on the basis of her status as a homosexual, since Bowers did not make the same assumption about conflict of interest with respect to himself or other lawyers in his department. *See Shahar v. Bowers,* 114 F.3d 1097, 1128-29 & nn.6-7 (11th Cir.1997) (Birch, J., dissenting).

Judicial notice is obviously appropriate. The "newspaper account" was not a reporter's conclusion or a statement by a third party; it was a statement by Mr. Bowers himself made through his own political campaign headquarters, admitting his conduct and asking forgiveness for it. It was published nationwide by newspapers, radio, television, and magazines of national circulation. Surely this court can know the content of a statement that is relevant, accurate because made by Mr. Bowers himself, and known to millions. Moreover, in light of the fact that "Attorney General Baker and Mr. Bowers have no objection to the Court's including the proffered information in the record of this case," Response of Attorney General Thurbert E. Baker and Former Attorney General Michael J. Bowers to Appellant's Motion to Supplement the Record or for a Remand to Do So at 7, we fail to see why the court refuses to do so.

*Petition for Rehearing:*

We dissent from the court's denial of Ms. Shahar's petition for rehearing.