ACCEPTED
03-15-00539-CR
8083275
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/3/2015 5:29:10 PM
JEFFREY D. KYLE
CLERK

## No. 03-15-00539-CR
## IN THE
## COURT OF APPEALS
## OF THE THIRD SUPREME JUDICIAL DISTRICT

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/3/2015 5:29:10 PM
JEFFREY D. KYLE
Clerk

_____

MATTHEW DIAZ,
Appellant,

v.

STATE OF TEXAS

_____

Appeal in Cause No. 72269
in the 426th District Court of
Bell County, Texas

_____

## REPLY BRIEF FOR APPELLANT MATTHEW DIAZ

_____

JOHN A. KUCHERA
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

# Table of Contents

                                                                        Page

Table of Contents                                                       ii-iii

Table of Authorities                                                    iv-vi

Argument

**Regarding Diaz's second issue:**  Whether because the trial court did not make an express deadly weapon finding at the time it adjudicated Diaz's guilt, the judgment should be corrected to delete the deadly weapon finding.

The trial court did not make an oral deadly weapon finding at the            2-5
time the court placed Diaz on deferred adjudication community
supervision.

Because Diaz's plea papers were unsworn and because the trial court          5-11
could not properly take judicial notice of the "facts" contained therein,
the trial court did not have sufficient evidence before it to make a
deadly weapon finding at the time the court placed Diaz on deferred
adjudication community supervision.

If a trial judge is required to make an express deadly weapon finding,       11-12
yet has the discretion to decline to make a deadly-weapon finding even
after finding the defendant guilty of an offense in which use of a deadly
weapon was a charged or necessary element, the only possible way to
make an express finding in such a situation is for the judge to do so
orally.

**Regarding Diaz's third issue:**  Alternatively, whether the trial court erred in over-assessing court costs against Diaz in the amount of $279.00.

The clerk has a statutory duty to set forth each (singular) specific         12-14
service that requires payment of a fee.  Article 102.011 list a number
of fees that can be paid for services rendered by a peace officer.  Not
one of the services set forth therein corresponds to a payment of $25.

Diaz does not have to wait until he has "double-paid" his court costs        14-17
in order to argue that that he shouldn't have to "double-pay" them.

Certificate of Service                  17

Certificate of Compliance         18

## Table of Authorities

**Page(s)**

**Cases**

*Augillard v. Madura*,
257 S.W.3d 494 (Tex.App.—Austin 2008, no pet.)..............................................9

*Boyd v. State*,
No. 02-11-00035-CR, 2012 WL 1345751 (Tex. App.—Fort Worth
Apr. 19, 2012, no pet.)....................................................................................14

*Cardenas v. State*,
403 S.W.3d 377 (Tex. App.—Houston [1st Dist.] 2013)...................................13

*Cole v. State*,
839 S.W.2d 798 (Tex. Crim. App. 1990) ...........................................................9

*Colliflower v. State*,
No. PD-1965-04, 2007 WL 274180 (Tex. Crim. App. Jan. 31,
2007) (not designated for publication) ...............................................................5

*Emmert v. State*,
07-08-0456-CR, 2009 WL 5823613 (Tex. App.—Amarillo Feb.
10, 2010, no pet.) ......................................................................................10, 11

*Ernst v. Child & Youth Servs.*,
108 F.3d 486 (3d Cir. 1997) ..............................................................................9

*Garza v. State*,
996 S.W.2d 276 (Tex.App.—Dallas, pet. ref'd)..................................................9

*Habib v. State*,
431 S.W.3d 737 (Tex. App.—Amarillo 2014, pet. ref'd) ..................................16

*Hearne v. State*,
415 S.W.3d 365 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd)..................13

*Jackson v. State*,
139 S.W.3d 7 (Tex.App.—Fort Worth 2004, pet. ref'd)......................................9

*Johnson v. State*,
    423 S.W.3d 385 (Tex. Crim. App. 2014) ......................................................15, 16

*King v. State*,
    No. 12-12-00020-CR, 2013 WL 2407198 (Tex.App.—Tyler May
    31, 2013, no pet.) .............................................................................................7

*Lambert v. Lambert*,
    No. 05-08-00397-CV, 2009 WL 1493009 (Tex.App.—Dallas May
    29 2009, no pet.) .............................................................................................10

*Latson v. State*,
    440 S.W.3d 119 (Tex. App.—Houston [14th Dist.] 2013, no pet.) .............15, 16

*Lewis v. State*,
    423 S.W.3d 451 (Tex. App.—Fort Worth 2013, pet. ref'd)..............................14

*Menefee v. State*,
    287 S.W.3d 9 (Tex. Crim. App. 2009) ...............................................................7

*Montano v. State*,
    433 S.W.3d 694 (Tex. App.—Houston [1st Dist.] 2014, no pet.)......................13

*Rosenkrans v. State*,
    758 S.W.2d 388 (Tex.App.—Austin 1988, pet. ref'd) ....................................7, 8

*Sexton v. State*,
    476 S.W.2d 320 (Tex. Crim. App. 1972) ...........................................................7

*Shahar v. Bowers*,
    120 F.3d 211 (11th Cir. 1997) ...........................................................................8

*Smith v. State*,
    422 S.W.2d 475 (Tex. Crim. App. 1968) ...........................................................8

*United States v. Garland*,
    991 F.2d 328 (6th Cir. 1993) .............................................................................9

*United States v. Hawkins*,
    76 F.3d 545 (4th Cir. 1996) ...............................................................................9

*United States v. Neil*,
    964 F.Supp. 438 (D.D.C. 1997)..........................................................................9

*Ex Parte Williams*,
    703 S.W.2d 674 (Tex. Crim. App. 1986) ..........................................................11

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 14.006 ......................................................17

Tex. Crim. Proc. Code Ann. art. 1.15 .......................................................6, 7, 10, 11

Tex. Crim. Proc. Code Ann. art. 102.011 ...........................................................13

Tex. Crim. Proc. Code Ann. art. 103.009(a)(1) ......................................................13

Tex. Gov't Code Ann. § 501.014(a) .................................................................16

**Other Authorities**

http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handboo
    k_English.pdf (last viewed December 2, 2015) ....................................................16

Tex. R. Evid. 201(a)................................................................................8

_____

MATTHEW DIAZ,
    Appellant,

    v.                                        **No. 03-15-00539-CR**

STATE OF TEXAS

_____

Appeal in Cause No. 72269
in the 426th District Court of
Bell County, Texas

_____

**REPLY BRIEF FOR APPELLANT MATTHEW DIAZ**
_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

    NOW COMES MATTHEW DIAZ, Appellant, by and through undersigned counsel, and submits this reply brief pursuant to the provisions of the Texas Rules of Appellate Procedure. Appellant raises three issues in his principal brief. The State has now filed its brief. Appellant responds herein to several of the State's arguments regarding his second and third issues. Appellant otherwise rests on his principal brief.

**Regarding Diaz's second issue:** Whether because the trial court did not make an express deadly weapon finding at the time it adjudicated Diaz's guilt, the judgment

should be corrected to delete the deadly weapon finding.

**1.** The State argues that the trial court made an oral affirmative deadly weapon finding on the record at the time Diaz was placed on deferred adjudication community supervision ("deferred"):

> During the plea proceedings the trial court inquired as to whether the Appellant understood the allegations of the use or exhibition of a deadly weapon and the effect of those allegations, and he indicated that he did. (RR. Supp.-9, 10). The trial court found the evidence sufficient to support a finding of guilty, but withheld such a finding and placed the Appellant on a deferred adjudication probation in keeping with the plea bargain[.] In cautioning the Appellant concerning the need to abide by the terms and conditions of his deferred adjudication, *the trial court expressly noted that there was an affirmative finding of a deadly weapon and the Appellant again indicated that he understood.* (RR. Supp. -17).

State Br., pgs. 8-9.

### **Appellant's reply**

Undersigned counsel *assumed* in Diaz's principal brief that the trial court had made a deadly weapon finding on the record at the time the court placed Diaz on deferred.[1] Undersigned counsel did not request a transcript from the hearing wherein

---

[1] The relevant excerpt from Diaz's principal brief reads as follows:
The trial court brought this to Diaz's attention at the hearing on State's First Amended Motion to Adjudicate:

Diaz was placed on deferred. The State however did request this transcript. This transcript indicates that the trial court *did not* make a deadly weapon finding at the time it placed Diaz on deferred. The trial court first of all admonished Diaz as to what the negative consequences of a deadly weapon finding *could be*:

> Court: You understand that the indictment in this case alleges that a deadly weapon was used or exhibited in the commission of the offense.
>
> Diaz: Yes, ma'am.
>
> Court: Do you understand what effect a deadly finding *could have in the event that you are sentenced to some time* in TDC?
>
> . . .
>
> Diaz: Yes, ma'am.

Supp. RR 9-10.

Near the conclusion of the hearing, the court pronounced what would be in the court's order as to the conditions of Diaz's community supervision:

> Mr. Diaz, I will follow the plea agreement in this case, and I'm placing you on a 10-year deferred adjudication probation. While you're on probation, I'll order that you pay a $1500 fine. That you serve 100 days in Bell County Jail as a condition of probation. I will give you credit for the 134 days that you've already served. I'll also order that you comply with all the terms and conditions on Page 5 of the presentence

---

Court: You were previously placed on deferred adjudication in this case by a written order that's dated April the 8th of 2014. And at that time you were placed on ten-year deferred adjudication probation for the felony offense of aggravated robbery.

Diaz: Yes, ma'am.

Court: And that included a finding of a deadly weapon. You understand that?

Diaz: Yes, ma'am. 2 RR 5.

*(Appellant's Br., pg. 11).*

3

investigation. And additionally, sir, I'm going to require that you have psychological screening and counseling at your expense. That's in addition to all the usual and customary terms of probation.

Supp. RR 16. *The court made no mention of a deadly weapon finding*.

The trial court then switched gears and admonished Diaz as to what *could happen* if he violated the terms of his community supervision:

Court: You understand, sir, that *if* you walk out of here and use marijuana or get in any trouble, you've violated your probation.

Diaz: Yes, ma'am.

Court: You understand what *can happen* to you *if* you violate your probation?

Diaz: Yes, ma'am.

Court: Tell me.

Diaz: I *can* get maxed out to the full maximum of 99 years.

Court: With an affirmative finding of a deadly weapon. You understand that?

Defendant: Yes, ma'am.

Court: You've got to be extremely careful, sir, *or you won't make it.*

Supp. RR 16-17. The context of the trial court's statement, "With an affirmative finding of a deadly weapon," shows it to be a warning of what *could happen* to Diaz *if* he violated the terms of his community supervision. The trial court did not make a deadly weapon finding any more than it imposed a 99-year sentence. Both were future possibilities, contingent upon whether Diaz violated the terms of his community supervision *in the future*. The trial court's oral pronouncement (or lack of oral pronouncement) is controlling because it protects a defendant's right to notice

4

of what punishment was assessed.[2] *Colliflower v. State*, No. PD-1965-04, 2007 WL 274180, at *2 (Tex. Crim. App. Jan. 31, 2007) (not designated for publication).

The fact that the trial court's oral pronouncement was controlling also addresses the State's reliance upon a deadly weapon finding in the trial court's written order deferring adjudication.[3]

**2.** The State argues that Diaz specifically admitted using/exhibiting a deadly weapon in his plea papers:

> During the plea proceeding the Appellant entered a plea of guilty to the charge of aggravated robbery and the trial court took judicial notice of the Appellant's judicial confession. . . . In that judicial confession the Appellant acknowledged that he had read the indictment and had committed each and every act alleged therein and that all of the alleged facts were true and correct. He specifically admitted that "All deadly weapons allegations are true and correct." (CR-25).

State Br., pg. 8.

> His judicial confession specifically affirmed that the deadly weapon allegations in the indictment were true and correct. (CR-25).

State Br., pg. 16.

---

[2] Diaz continues to maintain that the trial court's pronouncements at the time it placed Diaz on deferred, whatever they were, were not carried forward, given that they were completely replaced by the trial court's oral pronouncements at the adjudication of guilt hearing. See Appellant's Br. Pg. 13-15, citing *Taylor v. State,* 131 S.W.3d 497 (Tex. Crim. App. 2004).

[3] "The trial court's Order of Deferred Adjudication recited that there was an affirmative finding of the use of a deadly weapon, a firearm. (CR-30)." State Br., pg. 9.

**Appellant's reply**

Because Diaz was not placed under oath, and because his plea papers were unsworn, they did not constitute sufficient evidence, for purposes of article 1.15[4] of the Code of Criminal Procedure, to establish his guilt or to establish a basis for a deadly weapon finding. Diaz's "Written Plea Agreement" contains a fill-in-the-blank "Judicial Confession" with the following language:

> Upon my oath I swear my true name is <u>Matthew Diaz</u> and I am <u>18</u> years of age; I have read the indictment or information filed in this case and I committed each and every act alleged therein, except those acts waived by the State. All facts alleged in the indictment or information are true and correct. I am guilty of the instant offense as well as all lesser included offenses. All enhancement and habitual allegations set forth in the indictment or information are true and correct, except those waived by the State. *All deadly weapon allegations are true and correct.* All other affirmative findings to be made by the Court pursuant to this Written Plea Agreement are true and correct. I swear to the truth of all the foregoing and further, that all testimony I give in the case will be the truth, the whole truth and nothing but the truth, so help me God.

---

[4] Article 1.15, in its entirety, provides as follows:

No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, *however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same.* The evidence may be stipulated if the defendant in such a case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause. (emphasis added)

Tex. Crim. Proc. Code Ann. art. 1.15 (West 2005).

CR 20, 25. Notwithstanding the "I swear under oath" language in Diaz's plea papers, no jurat is to be found anywhere therein. Furthermore, no sworn testimony was taken during the hearing where Diaz was placed on deferred.

In *Menefee v. State,* 287 S.W.3d 9 (Tex. Crim. App. 2009), the Court of Criminal Appeals listed the following methods by which evidence may be adduced to support a guilty plea (so long as the method covers all of the elements of the charged offense) in an article 1.15 proceeding:

- Defendant's sworn written statement admitting his culpability or acknowledging that allegations in the charging instrument are true and correct;
- Defendant may testify under oath in open court admitting his culpability or acknowledging that allegations in the charging instrument are true and correct;
- Defendant consents to proffer of evidence;
- Defendant consents to an oral or written stipulation of what the evidence against him would be.
-

*Id.* at 13. Again, Diaz did not testify under oath[5] and his purported written statement was unsworn. Nor did he consent to an oral or written stipulation.[6] Although the

---

[5]*See King v. State,* No. 12-12-00020-CR, 2013 WL 2407198 at *6 (Tex.App.—Tyler May 31, 2013, no pet.) (mem. op., not designated for publication) (Defendant's plea colloquy did not constitute a judicial confession, in part because "[t]he record does not show that [he] was placed under oath prior to the guilty plea hearing."); *Cf. Sexton v. State,* 476 S.W.2d 320, 321 (Tex. Crim. App. 1972) (Defendant's admission constituted a "judicial admission" because he was sworn in as a witness).

[6] *Rosenkrans v. State,* 758 S.W.2d 388 (Tex.App.—Austin 1988, pet. ref'd) provides an example of an oral stipulation in support of a guilty plea:

7

trial court took judicial notice of Diaz's plea papers (Supp. RR 13), this did not convert them into competent evidence.

Rule 201 of the Texas Rules of Evidence allows a court to take judicial notice of adjudicative facts. Tex. R. Evid. 201(a). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* "[T]he taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers,* 120 F.3d 211, 214 (11th Cir. 1997). However, the facts set forth in Diaz's "judicial confession" are not the sort of facts

---

> [State:] Your Honor, we're stipulating that Jerry Wayne Rosenkrans on or about the 12th day of December 1986 in Travis County, Texas, did then and there knowingly and intentionally possess a controlled substance, namely: morphine, in an amount of less than 28 grams by actual weight including adulterants and dilutants.

*Id.* at 389. *Smith v. State,* 422 S.W.2d 475 (Tex. Crim. App. 1968) provides an example of a written stipulation in support of a guilty plea:

> My name is Hearne Edward Smith. On the 20th day of September; A.D. 1966, I had Nellie B. Allen in a pickup truck which belonged to her with me. Sometime around midnight on the above date, I shot and killed the said Nellie B. Allen with a shotgun. This happened in a cottonfield between Wharton and El Campo in Wharton County, Texas.

*Id.* at 476.

that come within the purview of Rule 201. *See e.g. Garza v. State,* 996 S.W.2d 276, 279-80 (Tex.App.—Dallas, pet. ref'd) ("We are convinced . . . that assertions made by an individual, even under oath, are not the type of facts that are capable of accurate and ready determination by a source whose accuracy cannot be reasonably be questioned."); *United States v. Hawkins,* 76 F.3d 545, 551 (4th Cir. 1996) (identity of defendant may not be proven by judicial notice)[7]; *United States v. Neil,* 964 F.Supp. 438, 445-46 (D.D.C. 1997) (judicial notice is not appropriate for reasonably available documents that were referred to at trial but never offered into evidence); *Ernst v. Child & Youth Servs.,* 108 F.3d 486, 498-99 (3d Cir. 1997) (court did not err by declining to take judicial notice of *contents* of affidavit that had been submitted with defendant's motion for summary judgment; court could take notice of *filing* of affidavit but not its contents); *United States v. Garland,* 991 F.2d 328, 332 (6th Cir. 1993) (judicially noticing existence of criminal judgment in Ghana, but not noticing "the truth of the statements contained in the Ghana judgment because some of these facts may remain in dispute"). When evidence is the subject of improper judicial notice, it amounts to no evidence. *See Augillard v. Madura,* 257 S.W.3d 494, 503 n. 14 (Tex.App.—Austin 2008, no pet.) (trial court's improper taking of judicial notice equated to the record being "devoid of any evidence"); *Jackson v. State,* 139 S.W.3d

---

[7]The Texas Rules of Evidence are patterned after the Federal Rules of Evidence and cases interpreting the federal rules should be consulted for guidance as to their scope of applicability. *Cole v. State,* 839 S.W.2d 798, 801 (Tex. Crim. App. 1990).

7, 21 (Tex.App.—Fort Worth 2004, pet. ref'd) ("[W]hile a court may judicially notice the existence of the affidavit in its file, the court may not take judicial notice of the truth of the factual contents contained in such an affidavit because those facts are not the kinds of facts that a court may judicially notice."); *Lambert v. Lambert,* No. 05-08-00397-CV, 2009 WL 1493009, at * (Tex.App.—Dallas May 29 2009, no pet.) (mem. op., not designated for publication) ("Even though the trial court took judicial notice of its own file, that does not convert the parties' statements contained in court filings into substantive evidence."). Therefore, the trial court's taking judicial notice of Diaz's "judicial confession" amounted to a nullity.

Diaz includes this rebuttal in his reply brief simply to point out that there is not competent evidence in the record to establish a basis for a deadly weapon finding. Otherwise, this rebuttal amounts to much adieu about nothing. Because Diaz did not appeal the article 1.15 issue within thirty days of the date of the judgment placing him on deferred adjudication, to do so now would constitute a collateral attack upon the judgment. *Emmert v. State,* 07-08-0456-CR, 2009 WL 5823613, at *2 (Tex. App.—Amarillo Feb. 10, 2010, no pet.) (mem. op., not designated for publication). To successfully collaterally attack the order, Diaz would have to invoke the "void judgment" exception to the rule that the validity of original judgment cannot be attacked on an appeal from an order revoking community supervision; i.e., "the record must show a due process violation arising from a complete absence of

10

evidence to support the conviction, not merely insufficient evidence." *Id.* at \*3, citing *Thompson v. City of Louisville,* 362 U.S. 199 (1960)). However a guilty plea constitutes some evidence of guilt. *Ex Parte Williams,* 703 S.W.2d 674, 682 (Tex. Crim. App. 1986). Diaz pled guilty and thus cannot successfully collaterally attack the original judgment based on deficient article 1.15 evidence. *See Emmert,* at \*3.

**3.** The State concedes that the trial court made no explicit mention of a deadly weapon finding at the time it adjudicated Diaz's guilt and sentenced him. The State nonetheless maintains that because the offense of conviction includes as an element the use/exhibition of a deadly weapon, and because the trial court found Diaz guilty of the charged offense, this was enough to constitute an *express* deadly weapon finding:

> When the trial court ruled upon the motion to adjudicate . . . , *although the court did not mention the deadly weapon finding at that time*, it found the Appellant guilty of the offense of aggravated robbery, which necessarily included a finding that the element that made the offense aggravated robbery, the use of the deadly weapon was true.

State Br., pg. 16.

> [T]he only time the trial court did not specifically mention the deadly weapon was when it found the Appellant guilty of aggravated robbery and assessed punishment[.]

State Br., pg. 20.

11

**Appellant's reply**

Question: If a trial judge is required to make an *express* deadly weapon finding, but has the discretion to decline to make a deadly-weapon finding even after finding the defendant guilty of an offense in which use of a deadly weapon was a charged or necessary element, can a trial court, post *Guthrie-Nail*, simply rely on the fact that the court finds the defendant guilty of the charged offense (assuming the charged offense includes deadly weapon use/exhibition as a necessary element)? Diaz says the answer to that question has to be no. The State says the answer is yes. The question the State never answers is: If the trial judge does not have to orally state her deadly weapon finding on the record in order to make an express finding, how do we know that the judge didn't actually decline to make a deadly weapon finding? Diaz argues that we don't know, and because we don't know, there has not therefore been an express deadly weapon finding.

**Regarding Diaz's third issue:** Alternatively, whether the trial court erred in over-assessing court costs against Diaz in the amount of $279.00.

**1.** The State characterizes Diaz's complaint regarding the $25.00 Sheriff fee as a challenge to the sufficiency of the evidence:

> As to the allegations that the Sheriff's Fee and State Electronic Filing Fee are not authorized by statute, the Sheriff's Fee is indeed authorized by Article 102.011 of the *Texas Code of Criminal Procedure*. The

> Appellant claims, nevertheless, that the fee is not authorized because it is not itemized to specify the services set out in the article. This, however, is a challenge to the sufficiency of the evidence, which is not the question on an appeal where court costs are challenged.

State Br., pgs. 23-24.

**Appellant's reply**

Diaz is indeed challenging the *basis* of the Sheriff's fee. The circumstances giving rise to *each cost* must be confirmed by the record. *Cardenas v. State*, 403 S.W.3d 377, 387 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 423 S.W.3d 396 (Tex. Crim. App. 2014). Diaz acknowledged in his principal brief that Article 102.011 "provides for the payment of fees for the services of peace officers under certain circumstances." Appellant's Br., pg. 22. But from whence cometh the $25.00 figure? Article 103.009 requires the clerk to place in the bill of cost "*each fee or item of cost charged for a service* rendered in a criminal action or proceeding[.]" Tex. Crim. Proc. Code Ann. art. 103.009(a)(1); *Hearne v. State,* 415 S.W.3d 365, 366 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Article 102.011 does not contain "a specific service" that corresponds to a $25 fee.[8] *See Montano v. State,* 433 S.W.3d 694, 698 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Without any further guidance as to what authority may have justified the remaining $10 in assessed costs, we conclude that the trial court's award of court costs does not

---

[8] The individual fee amounts listed are $5, $8, $10, $35 and $50. Tex. Crim. Proc. Code Ann. art. 102.011.

13

accurately comport with the record[.]"); *Lewis v. State*, 423 S.W.3d 451, 461 (Tex. App.—Fort Worth 2013, pet. ref'd) ("[T]he record is not clear as to where this amount comes from and we are disinclined to speculate about where the trial court found it."); *Boyd v. State,* No. 02-11-00035-CR, 2012 WL 1345751, at *2 (Tex. App.—Fort Worth Apr. 19, 2012, no pet.) (mem. op., not designated for publication) ("The remaining figure contained in the community supervision document that Boyd challenges is the $89 'Due to CSCD' . . . we are unable to determine from the record what this figure represents[.]").

**2.** The State concedes that Diaz has been "double-billed" for court costs but argues that his "remedy" is to go ahead and pay double what he owes, and then rely on the Bell County district clerk to give him credit for overpayment:

> At the time that the Appellant was placed on deferred adjudication the trial court ordered that he pay court costs and fees in the amount of $251.00. . . . In the Judgment Adjudicating Guilt the court ordered payment of court costs in the amount of $577.00 . . . . The bill of costs at that time included those same categories, however, it also reflected additional costs apparently accrued during the deferred adjudication. It must be noted that on that bill of cost the date when the particular item of cost was added to the bill is noted and *that list clearly includes those of the first bill of cost.*

State Br., pg. 24.

> All of the court costs and fees assessed after the judgment adjudicating guilt were authorized by statute and part of the official bill of costs. They were properly included in the order and the *Appellant may rely upon the payment records of the district clerk to determine any credit he may have for previous payments.*

14

State Br., pg. 1.

> Nothing in the record indicates that the Appellant is being billed for amounts *previously paid.* It is respectfully submitted that where, as here, unpaid costs are carried over from a community supervision and included in the judgment of conviction, the only practical procedure is for the judgment to impose the original and any additional court costs and fees. *Then the Appellant can certainly show previous payment and receive credit at any time and may also rely upon the records of payment maintained by the court clerk.*

State Br., pg. 25.

> It is not reasonable to delete the order for the payment of items included on the bill of cost simply because the same category of cost was also included on the first bill. *Clearly the only practical way is for the court to order payment of the costs as set out in the bill and then to allow the Appellant to rely upon the records of payment in the clerk's office to show any credits for payments he may have made.*

State Br., pg. 26.

**Appellant's reply**

Although not stated in as many words, the State is actually invoking the ripeness doctrine.[9] In *Johnson v. State,* 423 S.W.3d 385 (Tex. Crim. App. 2014), the State argued, *inter alia,* that the appellant's argument about improperly imposed court costs was not ripe for review because the State had not at the time made any attempt to collect the assessed court costs. *Id.* at 391. The Court of Criminal Appeals

---

[9] "The ripeness doctrine protects against interference until a decision has been formalized and its effects felt ... by the challenging parties." (internal quotes omitted) *Latson v. State*, 440 S.W.3d 119, 122 (Tex. App.—Houston [14th Dist.] 2013, no pet.)

disagreed. *Id.* If a complaint about court costs is ripe for review before the State attempts to collect them, Diaz certainly does not have to wait until he has paid them (twice) before he can complain that they were improperly assessed. *See Habib v. State,* 431 S.W.3d 737, 744 (Tex. App.—Amarillo 2014, pet. ref'd) ("While the record provides a basis for the assessment of $581.63 in sheriff's fees, the bill of costs in cause number 07–13–00090–CR assesses sheriff's fees in the amount of $549.39, and the bill of costs in cause number 07–13–00094–CR assesses sheriff's fees in the amount of $445.00. As a result, it appears that appellant may have been charged twice for the performance of the same services. As such and on the basis of the evidence contained within the record, we will delete the assessment of sheriff's fees[.]").

The State's proposed remedy is eminently unreasonable for another reason. Diaz is in prison. All money that comes to him goes directly into an inmate trust fund. Tex. Gov't Code Ann. § 501.014(a) (West 2012); TDCJ Offender Orientation Handbook, pg. 64.[10] Neither § 501.014 nor the Offender Orientation Handbook make any provision for reimbursing an inmate for overpaid court costs. Diaz's only recourse would be to bring a civil suit. *See Latson v. State*, 440 S.W.3d 119, 123

---

[10]    http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf    (last viewed December 2, 2015).

(Tex. App.—Houston [14th Dist.] 2013, no pet.).  This might require him to incur additional court costs.  Tex. Civ. Prac. & Rem. Code Ann. § 14.006 (West 2002).

Respectfully submitted,

/s/ John A. Kuchera
John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

**Certificate of Service**

This is to certify that a true and correct copy of the above and foregoing Brief has this 3rd day of December, 2015 been mailed to:

Mr. Bob D. Odom, Assistant District Attorney, P.O. Box 540, Belton, Texas 76513

/s/ John A. Kuchera
John A. Kuchera,
Attorney for Matthew Diaz

## Certificate of Compliance with Rule 9.4

1. This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i) because the brief contains 4,302 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).


2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) and the type style requirements of Tex. R. App. P. 9.4(e) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman, size 14 font.


/s/ John A. Kuchera
John A. Kuchera,
Attorney for Matthew Diaz


Dated: December 3, 2015