**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

_____

VINCENT N. LOUNCHI,

　　　Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

　　　Respondent.

No. 21-9534
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

　　　Petitioner Vincent Nkameni Lounchi is a native and citizen of the Republic of

Cameroon. An Immigration Judge (IJ) denied his applications for asylum, withholding of

removal, and relief under the United Nations Convention Against Torture (CAT) after

finding his testimony lacked credibility. The Board of Immigration Appeals (BIA)

dismissed his appeal, finding no clear error in the IJ's adverse credibility determination.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Petitioner seeks review of the BIA's order. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition.

## BACKGROUND

The Department of Homeland Security (DHS) initiated removal proceedings, alleging Petitioner was removable under 8 U.S.C. § 1182 (a)(7)(A)(i)(I), as an applicant for admission without valid entry and travel documents. He admitted the factual allegations and sought asylum, withholding of removal, and CAT relief on the ground that he fled Cameroon to escape persecution based on his political opinion.

### 1. Testimony and Documents

Petitioner testified he joined the Southern Cameroons National Council (SCNC), a political party that advocates for the independence of southern Cameroon, in 2015, and that he fled Cameroon after being detained in harsh conditions, threatened, and beaten by gendarmes because of his of his anti-government and separatist political opinion.

Petitioner testified he participated in a protest march organized by the SCNC in 2016 during which police surrounded the protesters and arrested many of them, but he escaped. He testified further that during a 2017 protest march, an officer who had arrested Petitioner for refusing to pay money at a checkpoint recognized him and told other officers to arrest him, but he eluded them. Soon thereafter, he moved to another city because he feared being arrested.

Petitioner also described an incident where, one morning at about 5:30 when he was preparing to go to a 6:00 church service, he responded to a knock at the door, thinking it was his friend he was staying with. He opened the door to two officers and

tried to run back inside. The officers apprehended and arrested him. He testified that they were in the house for only a few minutes. They took him to a gendarme camp where they detained him in a crowded cell for eight days. Guards beat and interrogated him twice daily, and doused him with dirty water before each beating. He sustained wounds on his face, knees, legs, and laps. On the eighth day, while being transported to a maximum-security prison, Petitioner escaped during a restroom break.

Petitioner returned to the city where he spent nights in different places to avoid being identified and arrested. A family friend who was a police commissioner told him to leave the country and gave him a copy of a warrant that had been issued for his arrest.

Petitioner claimed that, while he was en route to the United States, gunmen in Colombia robbed the group he was travelling with, taking his passport and some of his money. They did not take the other identification documents and the almost $300 in cash he had when he arrived in the United States. He testified the robbers rummaged through his bag and that he did not have all of his money in the bag.

Petitioner also submitted documentary evidence, including an official criminal history document, his friend's affidavit, and a photograph that he testified depicted his arrest. He said an unknown neighbor took the picture and gave it to the friend who then gave it to Petitioner's wife. The friend's affidavit said the neighbor showed him the picture, but it did not say the neighbor gave him the picture or that he gave it to Petitioner's wife. The picture showed Petitioner with his hands handcuffed in front of him. Petitioner testified the officers handcuffed him in front because he was struggling and resisting arrest.

It was daylight in the picture. After counsel for DHS pointed out that the sun did not rise until 6:22 that morning so it would have been dark at 5:30, Petitioner insisted it was light out when he was arrested and said the arrest occurred during the "dry season" when "the sun comes out earlier." R. at 329. He also said that it was about 5:30 when the officers arrived and that some time passed by the time they dragged him outside where the neighbor took the picture. When reminded of his earlier testimony that the officers were inside for only a few minutes, he said he "wasn't paying attention to the clock . . . but it took a while." R. at 364. And when questioned about his earlier testimony that he was getting ready for a 6:00 church service when the officers arrived, Petitioner insisted that it was typically light out when he walked to church. Counsel for DHS asked the IJ to take administrative notice of the time of the sunrise the day of Petitioner's arrest as reflected in a printout from the internet. Petitioner's counsel did not object. The IJ granted the request, noting that the time of sunrise was a "scientific fact" appropriate for administrative notice. R. at 365.

Petitioner also submitted what he said was the April 2017 arrest warrant he said his police commissioner friend had given him and a June 2017 criminal history document. When asked why the criminal history document showed no arrest warrants against him, he said it was the result of the Cameroonian government's dysfunction and faulty record keeping.

## 2. The IJ's Decision

The IJ denied Petitioner's applications for relief after finding him not credible because he "provided inconsistent testimony, many of his claims were implausible, he

submitted documents that were not genuine, and his demeanor changed noticeably during portions of cross-examination" when challenged about inconsistencies in his evidence. R. at 84. In support of that determination, the IJ found the photo was "staged" and that Petitioner's testimony about it was "untruthful[]." *Id.* The IJ explained that (1) the photo supposedly depicted Petitioner being dragged away, but it was "clear that the subjects in the picture [were] not moving" and that the officers "posed to create a look that they" were dragging him; (2) he did not convincingly explain why it was daylight in the picture given his testimony regarding the time of his arrest; (3) contrary to his claim that he was handcuffed with his arms in front because he was resisting arrest, he was likely handcuffed with his arms in front because if his arms had been behind him "as would be expected, he would have been dragged with his face towards the ground, which would not have served [his] purposes in having his face appear in the picture"; and (4) his "story about the photo's origin [was] implausible" because it was unlikely an unknown neighbor would be outside the friend's house at 5:30 a.m. and take one "perfectly centered and nearly perfectly timed" picture. R. at 85.

The IJ identified other aspects of Petitioner's evidence that undermined his credibility, including that it was "unclear who [he] actually is," because he failed to prove his identity, and his claim that robbers stole his passport but not his money and other identification documents was implausible. R. at 85. The IJ also noted discrepancies between what Petitioner told the asylum officer and what he said in his 2014 visa application about his marital status, and the IJ did not believe his statement to the asylum officer that he had forgotten his wife's name and referred to her by the wrong name

because their relationship "had been so bad." R. at 86. Further, the IJ found the arrest warrant was "not legitimate" because the official criminal history document showed there were no outstanding warrants for him, and the body of the warrant was in French, not in English and French, as a Cameroonian warrant would be. R. at 86 & n.5.

Finally, the IJ found Petitioner's demeanor during cross-examination demonstrated a lack of credibility. In contrast to his "calm" demeanor on direct examination, Petitioner became defensive and animated when cross-examined about inconsistencies in his story. The IJ also noted that Petitioner was "often evasive in answering direct questions," "went off on a tangent," or referred to documents he had with him "instead of just answering questions based on his recollection." R. at 87.

### 3. The BIA's Decision

The BIA dismissed Petitioner's appeal, concluding the IJ's adverse credibility determination was "based on specific and cogent reasons" and was not clearly erroneous. R. at 3. The BIA acknowledged Petitioner's arguments challenging each of the IJ's findings, but found they did not "adequately reconcile[] the credibility issues" the IJ identified. R. at 5. In particular, the BIA upheld the IJ's findings that the arrest warrant was not legitimate and that Petitioner's testimony about the circumstances surrounding his arrest and the photo was not credible. The IJ also upheld the IJ's finding that it was implausible that robbers would take Petitioner's passport but not all of his money, explaining that it was not "illogical or without support in inferences that may be drawn from the evidence." R. at 5. In so holding, the BIA noted that it might have reached a different conclusion if it were the factfinder but recognized that it was not at

6

liberty to "substitute its own view of the evidence" for the IJ's.  R. at 8.  Finally, the BIA

found no clear error in the IJ's demeanor finding.  And, having concluded that the IJ's

adverse credibility determination was not clearly erroneous, the BIA held that the IJ

properly denied Petitioner's applications because without credible testimony, he could

not establish his eligibility for asylum, withholding of removal, or CAT protection.

## DISCUSSION

Where, as here, a single BIA member issues a brief order deciding the merits of an

appeal, we review the BIA's order and consult the IJ's decision when necessary to

understand the grounds for the BIA's decision.  *See Uanreroro v. Gonzales*, 443 F.3d

1197, 1204 (10th Cir. 2006).

The BIA reviews an IJ's credibility findings "for clear error, and only clear error."

*Kabba v. Mukasey*, 530 F.3d 1239, 1244 (10th Cir. 2008).  It may not substitute its

judgment for the IJ's because when "there are two permissible views of the evidence . . .

the factfinder's choice between them cannot be clearly erroneous."  *Id.* (internal quotation

marks omitted).  When the BIA's application of the clear error standard amounts to a

factual determination, we review its decision under the deferential substantial-evidence

standard.  *Kabba*, 530 F.3d at 1244.

Under that standard, "our duty is to guarantee that factual determinations are

supported by reasonable, substantial and probative evidence considering the record as a

whole."  *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).  We ensure that the IJ

gives "specific, cogent reasons for disbelieving [the alien's] testimony," *Elzour v.

Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) (internal quotation marks omitted), and

does not base an implausibility finding on "speculation, conjecture, or unsupported personal opinion," *id.* at 1153. But we do not reweigh the evidence or "question credibility findings that are substantially reasonable." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1205 (10th Cir. 2008) (internal quotation marks omitted). The agency's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, if the evidence and reasonable inferences support conflicting versions of events, we may not disturb the BIA's choice between them. To reverse its decision "we must find that the evidence not only *supports* [Petitioner's] conclusion, but *compels* it." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

Petitioner contends the BIA erred by (1) upholding the IJ's administrative notice decision; (2) finding no clear error in the IJ's adverse credibility determination; and (3) failing to consider evidence apart from the adverse credibility determination.

### 1. Administrative Notice

Petitioner takes issue with the administrative notice decision because counsel for DHS did not explain why the website was a credible and authoritative source. He also contends the IJ did not evaluate "the reliability and scholarship of the information," and should have "substantiate[d] [the information DHS provided] with [the opinion of] an expert witness." Pet. Br. at 18-19.[1]

---

[1] We note that, because Petitioner did not object to DHS's administrative notice request when given an opportunity to do so at the hearing, the BIA could have declined to address the issue on waiver grounds. *See Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1023 (10th Cir. 2007).

An agency may take administrative notice of a fact that is "not subject to reasonable dispute" because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *de la Llana-Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994) (internal quotation marks omitted). Scientific facts such as when the sun rose or set on a particular day are among "the kinds of things about which courts ordinarily" take notice. *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997); *see also Delaware, L. & W.R. Co. v. Koske*, 279 U.S. 7, 12 (1929) (taking judicial notice of the time of sunrise and light conditions). And it is not uncommon for courts to take notice of "factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).

The BIA rejected Petitioner's challenge to the IJ's decision because he failed to "present any evidence or otherwise sufficiently demonstrate on appeal how the administratively noticed fact is subject to reasonable dispute." R. at 4. We agree—the time of sunrise the day of Petitioner's arrest is easily verifiable, and he presented no evidence establishing either that the time shown on the printout was inaccurate or that the website was an unreliable source.[2]

## 2. Adverse Credibility Determination

Petitioner next contends the BIA erred in concluding the IJ's adverse credibility determination was not clearly erroneous. Specifically, he claims the record does not

---

[2] Petitioner's citation to cases discrediting Wikipedia articles is unhelpful because the website at issue here is not Wikipedia.

support the IJ's findings that the arrest photo was staged and that his story about the theft of his passport was implausible.[3]  But he concedes "the IJ's adverse credibility determination is supported by permissible views of the evidence."  Pet. Br. at 27.  While he argues there is record support for a contrary finding, this argument is insufficient to show the agency decision is unsupported by substantial evidence.  *See Elias-Zacarias*, 502 U.S. at 481 n.1.

Considering the record as a whole, we conclude the BIA's decision is supported by substantial evidence.  The IJ gave specific, cogent reasons for finding Petitioner not credible and properly based that determination on inconsistencies in his testimony, inconsistencies between his testimony and his documentary evidence, inconsistencies in his documents, concerns about his demeanor, and the conclusion that key aspects of his story were implausible.  *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (providing that an IJ "may base a credibility determination on the [applicant's] demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his statements, "without regard to whether" they go "to the heart of the applicant's claim"); *Elzour*, 378 F.3d at 1152.  The BIA correctly rejected Petitioner's assertion that the IJ was required to credit his explanations.  *See Matter of D-R-*, 25 I. & N. Dec. 445, 455 (B.I.A. 2011) (an IJ "is not required to accept a respondent's assertions, even if plausible, where there are other permissible views of the evidence based on the record.").  And while

---

[3] Petitioner does not challenge and has therefore waived any arguments he might have made regarding other aspects of the BIA's review of the IJ's adverse credibility determination.  *See Kabba*, 530 F.3d at 1248 (arguments not raised or inadequately briefed are waived).

reasonable minds could differ about the plausibility of Petitioner's testimony regarding his arrest, the photo, and the passport theft, substantial evidence—including the administratively noticed fact of the time of sunrise the day of his arrest and the IJ's unchallenged demeanor finding—supports the BIA's determination. *See Chaib v. Ashcroft*, 397 F.3d 1273, 1278 (10th Cir. 2005) (recognizing that an incredibility determination may be based on inherent inconsistencies in the applicant's testimony, the implausibility of his story, and testimonial demeanor).

### 3. Other Evidence

We also reject Petitioner's contention that the BIA erred by denying his applications for relief based solely on the adverse credibility determination.

An applicant's testimony, if credible, may be enough to satisfy his burden of establishing entitlement to relief. 8 U.S.C. § 1158(b)(1)(B)(ii)-(iii) (asylum); *id.* § 1231(b)(3)(C) (withholding) (incorporating asylum standards); 8 C.F.R. § 1208.16(c)(2) (CAT relief). Conversely, if the agency determines that his testimony is not credible, it may deny relief on that basis alone. *See id.*

The record indicates that the IJ considered Petitioner's other evidence and found it insufficient to support his applications absent credible testimony from him. We presume the BIA reviewed the complete record as well. *See Batalova v. Ashcroft*, 355 F.3d 1246, 1252 (10th Cir. 2004). The BIA mentioned some of Petitioner's other evidence in outlining the factual background and his testimony, and the fact that it did not expressly discuss each piece of evidence or explain why the other evidence was insufficient to overcome the adverse credibility determination does not mean it failed to consider his

11

evidence. *See Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995). Its decision appropriately focused on Petitioner's credibility, and we find no error in its conclusion that his lack of credible testimony prevented him from establishing his entitlement to relief. *See Matter of M-S-*, 21 I. & N. Dec. 125, 129 (B.I.A. 1995) ("A persecution claim which lacks veracity cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for asylum and withholding relief.").[4]

Finally, Petitioner argues the BIA "failed to comply with its own regulations and erred in failing to submit this case to a three-member panel for decision." Pet. Br. at 2. But he does not develop this argument beyond this one-sentence assertion, and he does not even acknowledge the criteria for assigning a three-judge panel, *see* 8 C.F.R. § 1003.1(e)(6), much less argue those criteria were satisfied here. Accordingly, we decline to address it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

## CONCLUSION

We deny the petition for review.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[4] We are not persuaded otherwise by Petitioner's citation to out-of-circuit authority holding that an IJ may not deny relief on the basis of incredible testimony alone if other objective evidence supports the applicant's claim for relief. Those cases are inapposite here because the other evidence Petitioner submitted in support of his persecution claim was either not individualized (the country conditions evidence) or not objective (his friends' and family members' affidavits and letters).