[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14922
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-20511-KMW

DYNASTY MANAGEMENT, LLC,

                                        Plaintiff - Appellant,

versus

UMG RECORDINGS, INC.,
AUGUST ALSINA,
SHEILA SANDERS,
NNTME MUCO, LLC.,
HENRY LEE,
DONALD ALBRIGHT,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 21, 2018)

Before MARCUS, WILSON, and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiff/Appellant Dynasty Management Group, LLC ("Dynasty") appeals several orders, including: a Fed. R. Civ. P. 12(b)6 motion to dismiss that the district court granted for two of the initial 11 defendants, a separate order of dismissal as a sanction for other defendants, a vacating of a previously-entered default judgment against those same defendants, and an appeal of the district court's finding of diversity jurisdiction. The dispute centers on hip-hop artist and defendant August Alsinsa's alleged breach of contract with his former management company, Dynasty, as well as interference claims against Alsina's subsequent managers and co-defendants. The issues on appeal are straightforward, but several questionable decisions by Dynasty's counsel in the district court have led to multiple complaint revisions, a previous appeal to the Eleventh Circuit resulting in a limited remand, and a lengthy record on appeal. In short, the facts and the law are simple, but the procedural history is complicated. Nevertheless, after reading Dynasty's brief[1] and reviewing the record, we affirm the district court's orders in their entirety.

---

[1] Appellees did not file an appellate brief.

2

# I. BACKGROUND

## A. Factual history

The following facts come exclusively from the third and final amended complaint ("FAC"). Alsina is a 26-year-old hip-hop artist currently embroiled in a dispute with his former manager, Dynasty. Alsina has apparently enjoyed a fairly rapid rise to stardom. As recently as 2014, he was winning BET Awards and performing as the opening act for Usher. However, this dispute centers on the contracts Alsina made during his rise to fame in 2009, when he would have been around age 16-17.

At the time, he entered into a very broad management agreement with Dynasty for them to provide his managerial services. In short, Dynasty would provide exclusive management services and efforts to procure employment for Alsina, in exchange for 15% of Alsina's revenue that derived from these efforts. Shortly thereafter, a Dynasty executive, realizing that Dynasty was outlaying substantial financial resources to promote Alsina, made an oral contract with Alsina that gave Dynasty exclusive ownership of creative works that Alsina created with Dynasty's money if Alsina breached the original agreement. Pursuant to that understanding, Dynasty bankrolled Alsina's production of two singles,

3

including one named "That Boy,"[2] in an effort to attract the interest of major record producers such as Universal or Baluga Heights.

Approximately six weeks after the original agreement, Alsina quit responding to Dynasty's communications, but Dynasty continued to work toward securing Alsina a record deal. Meanwhile, Dynasty alleges, Alsina had entered into an agreement with Henry Lee and Donald Albright, d/b/a NNTME, to provide similar managerial services. Shortly thereafter, NNTME secured a $3 million deal with Universal. Dynasty claims that it contacted Lee and Albright to inform them that it represented Alsina. Dynasty now sues NNTME, Lee, and Albright for one count of tortious interference with an advantageous business relationship and one count of tortious interference with a contractual relationship. Dynasty also sues Alsina and his mother Sheila Sanders, who guaranteed his contract when Alsina was a minor, for breach of contract.

## B. Procedural history

Although the underlying factual dispute is unremarkable, the case enjoys an extensive procedural history, as Dynasty's counsel has amended the complaint four times, the district court issued sanctions dismissing the case, and the Eleventh

---

[2] The FAC lists the single as "That Boy," although consultation with YouTube reveals that the actual title is "I'm That Boy."

4

Circuit remanded a jurisdictional question.  In one of its final orders in this case, the district court accurately described the procedural history as "tortured," even as the case does not present especially complex facts or legal questions.  (DE 128). Because the district court has already provided a full narrative of the case in the above-referenced order, we will limit our recitation of the procedural history to the parts relevant to this appeal.

Early in the litigation, Dynasty obtained a Clerk's default against defendants Sanders, Alsina, Albright, and NNTME for failing to respond to allegations in the amended complaint.[3]  (DE 27, 34).  Several months later, NNTME and Lee filed a motion to dismiss, claiming they were not served until long after Dynasty had obtained the Clerk's default against NNTME.  The court deferred ruling on this motion, and Dynasty eventually filed an unopposed motion for leave to file a second amended complaint, against these same defendants, out of time.  The court entered an omnibus order granting the motion to dismiss, vacating the Clerk's defaults, granted the motion for leave to file the second amended complaint, and accepted the second amended complaint.  It also ordered Dynasty to file a motion for final default judgment against these defendants or show cause as to why those

_____

[3] In the course of this litigation, Dynasty has filed a complaint, an amended complaint, a second amended complaint, and a third/final amended complaint.  The district court refers to the last one as the final complaint, while Dynasty usually refers to it as the third complaint.

claims should not be dismissed for failure to prosecute.  Pursuant to this order, NNTME and Lee filed separate motions to dismiss the second amended complaint. Dynasty did not respond to this, but incorrectly requested an extension to respond to the now-moot motion to dismiss the amended complaint.  With that, the court granted the defendants' motion to dismiss the second amended complaint and dismissed the remaining claims for failure to prosecute.  The court then gave Dynasty two more weeks to file a final amended complaint.  (DE 63).

Lee and NNTME filed a motion to dismiss the final amended complaint, which alleged two counts of tortious interference, and the district court granted this motion on September 6, 2017 (DE 127).  The district court found that Dynasty failed to plead either of the interference claims with enough specificity to support a claim for relief.  Dynasty's allegation that it reached out to the defendants to inform them that Dynasty represented Alsina was insufficient because it did not establish that the defendants had the requisite knowledge of the existence of the business relationship or contract, much less that the original agreement between Dynasty and Alsina  was exclusive.  More fatally, Dynasty also failed to allege how the defendants intentionally interfered with the business relationship, or how the defendants induced Alsina into breaching his contract with Dynasty.

6

That same day, the court conducted a *sua sponte* review of the record, and disposed of the remaining claims against Alsina, Sanders, and Donald Albright. (DE 128). (By then, the rest of the original 11 defendants had already been dismissed for various reasons that are not challenged on appeal). Noting that Dynasty's counsel had repeatedly failed to comply with court orders and local rules throughout the course of the litigation up to that point, the district court found that Dynasty was simply unable to prosecute this action, and therefore, all remaining claims should be dismissed as sanctions pursuant to Fed. R. Civ. P. 41(b) and the court's inherent authority to manage its docket.

This appeal followed, but not before hitting a jurisdictional hurdle: After Dynasty filed its notice of appeal, the Eleventh Circuit issued a jurisdictional question to the parties. It noted that the citizenship of some of the defendants had not been adequately addressed in the pleadings, and requested that the parties explain how potential jurisdictional defects could be clarified or cured. Dynasty responded that it had insufficient information to determine the parties' diversity, and urged the court to vacate all the relevant orders and remand the case to state court. Instead, a previous Eleventh Circuit panel remanded the case to the district court to determine the citizenship of all the parties to the case at the time of removal. On remand, the district court carefully analyzed the citizenship of all the

7

parties using a variety of sources, and found that the parties were completely diverse.  (DE 137).  This court issued a notice of probable jurisdiction, and this appeal ultimately followed.

## II.    ISSUES

There are four issues on appeal:

    (1)    Whether the district court erred in granting the motion to dismiss the plaintiff's claims of tortious interference against defendants Lee and NNTME.

    (2)    Whether the district court erred in dismissing claims against defendants Alsina, Sanders, and Albright as a sanction.

    (3)    Whether the district court erred in vacating a prior default judgment against defendants Alsina, Sanders, and Albright.

    (4)    Whether the district court erred in determining on limited remand that diversity jurisdiction existed between the parties at the time of removal.

## III.    STANDARDS OF REVIEW

This appeal utilizes several standards of review.  First, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

8

true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial possibility when the plaintiff's allegations allow a court to "draw [a] reasonable inference that defendant is liable for [the] misconduct alleged." *Id.*  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

A grant of a 12(b)6 motion to dismiss will be reviewed *de novo*, also abiding by the district court's obligation to accept the plaintiff's factual allegations as true and construing the complaint in the light most favorable to the plaintiff.  *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

An involuntary dismissal under Fed. R. Civ. P. 41(b) for want of prosecution will be reviewed under an abuse-of-discretion standard.  A district court cannot impose a dismissal with prejudice unless there is "clear record of delay or contumacious conduct by the plaintiff."  *Morewitz v. West of Eng. Ship Owners Mut. Protection and Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995).

9

While Dynasty argues that the vacating of the clerk's defaults (the third issue on appeal) should be reviewed for abuse of discretion, the trial court actually dismissed those claims under its powers to dismiss claims for want of prosecution. Therefore, this issue will also be reviewed under the abuse-of-discretion standard.

Finally, the district court's order on the jurisdictional questions will be reviewed *de novo*, although factual findings will only be reviewed for clear error. *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1337 (11th Cir. 2015).

## IV.    DISCUSSION

### 1.  Dismissal of tortious interference claims

Dynasty first argues that the district court incorrectly dismissed its two remaining claims against Lee and NNTME for tortious interference with a business relationship and tortious interference with a contractual relationship. Those claims lack merit. As Dynasty itself notes, under the *Twombly* and *Iqbal* standard, "a formulaic recitation of the elements of a cause of action will not do." (Brief for Appellant at 11).

A claim for tortious interference with a business relationship contains four elements: that the plaintiff had a business relationship (not necessarily evidenced by an enforceable contract), that the defendant had knowledge of this relationship,

10

that the defendant intentionally and unjustifiably interfered with the relationship, and that the plaintiff suffered damages.  A claim for tortious interference with a contractual relationship contains the same elements, except that the plaintiff must establish the actual existence of a contract, and that the defendant procured the contract's breach.

Unfortunately for Dynasty, its final amended complaint and its brief provide nothing more than a "formulaic recitation," which the district court already rejected.  Its brief then goes on to simply re-quote everything that Dynasty alleged in its final amended complaint, without offering any responses to the defects noted by the district court in its order dismissing these claims.

The district court, on the other hand, found the complaint lacking, noting that the complaint's allegations failed to allege with specificity that the defendants knew of Dynasty's contractual or business relationship with Alsina.  Although the complaint noted that Dynasty contacted defendants Lee and Albright to inform them that Alsina was Dynasty's client, that allegation fails to establish when the defendants would have learned about the Dynasty-Alsina relationship, and that their agreement was exclusive.  By extension, the complaint could not show how the defendants interfered with Dynasty's business relationship or contract. Without more details about the defendants' knowledge of the Dynasty-Alsina

11

relationship, the complaint also failed to demonstrate how the defendants could induce Alsina into breaking his agreement, or otherwise interfere with the business relationship.

Dynasty offers nothing new to challenge the findings of the district court, instead opting to recite the same allegations it leveled in its complaint that the district court fully considered. Because Dynasty effectively offers no new arguments on appeal, and because the district court correctly noted deficiencies under the *Twombly/Iqbal* standard, we affirm this aspect of the district court's order.

## 2. Dismissal of claims as sanctions

Dynasty next argues that the trial court erred when it dismissed Dynasty's claims against defendants Alsina, Sanders, and Albright as a sanction for Dynasty's failure to prosecute. Although this section of the Dynasty's argument is not entirely clear, Dynasty's primary argument appears to be that dismissal as a sanction, being one of the most severe sanctions available for a trial judge, may only be utilized where there is "a clear record of delay or willful contempt and lesser sanctions would be insufficient." (Brief at 17, citing *Kilgo v. Ricks*, 983 F.2d 189, 192 (11th Cir. 1993). Citing Eleventh Circuit precedent that dismissal as a sanction is an appropriate way to punish the litigant, and not just its counsel, for

12

the litigant's shortcomings, Dynasty further argues that the district court failed to provide an explanation as to why lesser sanctions would be inadequate.  (Brief at 18, citing *Phipps v. Blakeney*, 8 F.3d 788, 791 n. 6 (11th Cir. 1993).

*Phipps* acknowledges that the district court can make the requisite explanation for its sanctions either explicitly or implicitly, and that litigants can be punished for their lawyer's failings "only as a last resort." *Id.* The only fact-specific defense that Dynasty advances is that, "apparently, Judge Williams believed the case was not progressing fast enough, even though the docket reveals an armada of activity."  (Brief for Appellant at 17).  The docket does indeed reveal an armada of activity, but the heart of the issue, which the district judge adequately explains, is that the activity fails to comply with specific orders and instructions that the district court was issuing to Dynasty.  (DE 128 at 9).  The district judge spends nearly four pages detailing exactly how, over the previous year, Dynasty had continually failed to respond to court orders and instead repeatedly advanced arguments that the district court had already rejected.  (DE 128 at 9).  In deeming that Dynasty did not prosecute its case, the district court also noted that Dynasty had not pursued any discovery despite the existence of a Scheduling Order and a past discovery deadline.

13

Dynasty fails to offer any explanation for the defects that the district court notes, which implicitly – if not explicitly – explains why the district court found the sanction of dismissal to be appropriate for this case. Dynasty was on notice by the district court that its "armada of [docket] activity" was failing to advance the case in the court-prescribed manner, and furthermore, that Dynasty was willfully failing to obey court orders, especially when the court noted the deficiencies on numerous occasions throughout the process. Given the district court's findings, and Dynasty's failure to meaningfully rebut them, the sanctions do not rise to an abuse of discretion, and we affirm this aspect of the district court's order.

### 3. Vacating the partial default judgments

Dynasty argues that, in addition to erring when dismissing the case against Alsina, Sanders, and Albright, the district court further erred by vacating the defaults that Dynasty had obtained against them. Presenting this argument as the third issue in Dynasty's brief is a bit confusing, as the default, and subsequent vacating thereof, actually occurred before the district court dismissed the claims as a sanction, discussed above.

Pursuant to Fed. R. Civ. P. 55(a), Dynasty successfully obtained a clerk's default against the defendants early on in the litigation. (DE 27, 32). Dynasty attempts to contest the setting aside of the default under Fed. R. Civ. P. 55(c) by

14

arguing that the district court lacked good cause. Upon closer review of the record, however, this is not the applicable standard. As the district court noted in its October 5, 2016 order, the district court had previously ordered Dynasty to either file a motion for final default judgment against these defendants pursuant to Fed. R. Civ. P. 55(b)(2), or show cause as to why these claims should not be dismissed for failure to prosecute. (DE 63). Dynasty did neither; therefore, the district court dismissed those claims. Contrary to Dynasty's claim, then, this court does not review the propriety of setting aside the default, which never happened in the district court, but instead reviews the validity of the dismissal of the claims for failure to prosecute under the abuse of discretion standard. Consequently, Dynasty's legal authorities, which discuss the legal standards when the party in default is moving for relief under Fed. R. Civ. P. 55(c), are inapposite in this scenario. (Brief for Appellant at 19, citing *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) and *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)).

On a motion for reconsideration, Dynasty's counsel attempted to have the dismissal reversed on the grounds of excusable neglect, per Fed. R. Civ. P. 60(b)(1). Dynasty's counsel attempted to explain that he never received the court's order to show cause because he did not understand that he needed to click a

15

hyperlink on the federal filing system's website to read the text of the court's order. The district judge described this request as "beyond preposterous," and promptly denied the motion to reconsider. (DE 73 at 3). More problematically, however, was the fact that before filing the motion for reconsideration, Dynasty had already filed the final amended complaint containing the same claims against Alsina, Sanders, and Albright, and the district court had accepted it. As the district court later noted in one of its final orders, this procedural posturing effectively resulted in Dynasty's motion for reconsideration asking the district court to revisit moot issues. (DE 128 at 5).

Although the procedural posture of this portion of the appeal is not entirely clear, since Dynasty's final amended complaint effectively superseded the dismissal, this particular issue on appeal is moot, and for the same reasons discussed above, we conclude that the district court did not abuse its discretion in dismissing these claims.

### 4. Existence of diversity jurisdiction

Finally, Dynasty advances two challenges to the district court's earlier determination that the parties were completely diverse for purposes of determining diversity jurisdiction. First, Dynasty argues that UMG's proffering of residency to prove diversity jurisdiction errs by elevating residency to the same status as state

16

citizenship/domicile.  Because UMG's[4] Notice of Removal claims that all but one of the parties are "residents" or "incorporated" of/in certain states, Dynasty cannot be certain that these parties are United States citizens.  Second, Dynasty says that UMG's exhibits attached to the pleadings are unverified, and therefore cannot be used to establish diversity.

As a preliminary matter, the only legal authority Dynasty cites in this portion of its brief is three cases from the Seventh, Eighth, and Eleventh Circuits for the general precautionary proposition that federal courts should view removal attempts with a presumption toward remand if jurisdictional matters contain any uncertainty.  Dynasty does not back its substantive arguments with legal authority, although the arguments remain equally meritless.

As the trial court noted, the Eleventh Circuit has previously stated that "Citizenship is equivalent to domicile for purposes of diversity jurisdiction."  (DE 137 at 6, citing *McCormick v. Aderholdt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)).

---

[4] UMG was one of the initial 11 defendants who initially removed the case to federal court, although they later settled with Dynasty.  On remand, the district court asked them to defend their removal of the case, and they obliged, even though by then they had settled out of the case.

17

Dynasty's first argument – that  UMG's averments of residency are insufficient to establish citizenship – is moot in light of the district court's earlier order on remand.  (DE 137).  Although Dynasty may be correct in noting that UMG's removal notice would have been cleaner had it alleged the parties' citizenship rather than residency, the district court's order examines record evidence and explicitly makes findings of citizenship with regards to each party in its conclusions.  The district court found that each party was a citizen of a State other than Florida, with the exception of two later-dismissed parties who were British citizens.  Thus, the district court cured any potential defects in the pleadings that may have initially conflated residency and citizenship.

As to Dynasty's second argument, it fails to cite any case or rule of civil procedure that requires jurisdictional pleadings to be verified.  In fact, in its order, the trial court cites two cases holding that courts may still examine the entirety of the records before them in search of any evidence that diversity jurisdiction exists. ("Where no motion to amend the pleadings is filed, the Court may still examine the entire record 'for the purpose of curing a defective averment of citizenship.'")  (DE 137 at 7, citing *Sun Printing & Publishing Assoc. v. Edwards*, 194 U.S. 377, 382 (1904) and *Williams v. Best Co., Inc.*, 269 F.3d 1316, 1320 (11th Cir. 2001)).  This court does have precedent rejecting jurisdictional allegations when made in the

18

form of one self-serving statement in a brief. *Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("[T]o find defective jurisdictional allegations could be cured based exclusively on a plaintiff's self-serving argument about her own citizenship in a brief would be tantamount to permitting her to create jurisdiction simply by saying so."). Dynasty, however, fails to cite any Eleventh Circuit precedent refuting the district court's basic observation that it has wide-ranging authority to examine the entire record in search of evidence supporting diversity jurisdiction.

In this case, the district court found ample evidence of jurisdiction, using the procedure mentioned above. The district court spent five pages in its order detailing extensive evidence from a variety of sources, including business records, addresses listed in court filings, and sworn statements, just to name a few sources, in concluding that complete diversity existed among the parties. (DE 137 at 8). Although Dynasty is correct in noting that not every defendant's domicile is specified in a verified pleading, Eleventh Circuit precedent is also clear that the district court did not err in concluding that diversity jurisdiction existed when ample evidence existed in the record to show that the parties were diverse at the time of removal. Therefore, we affirm the district court's order that the parties were completely diverse for purposes of subject matter jurisdiction.

19

## V.    CONCLUSION

Because Dynasty's arguments in this appeal are all meritless, we affirm the district court's orders.

AFFIRMED.