[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-13441
_____

D. C. Docket No. 98-02747–CV-TMP-S

HAROLD T. MCCORMICK,

Plaintiff-Appellee,

versus

H. CHANEY ADERHOLT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 10, 2002)**

Before CARNES and FAY, Circuit Judges, and HUNT[*], District Judge.

PER CURIAM:

I.  INTRODUCTION

_____

[*] Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

This medical malpractice action was brought against Appellant, Dr. H. Chaney Aderholt ("Aderholt"), Dr. R.B. Kent, III, and Dr. Richard Stahl, asserting negligence in the treatment of plaintiff/appellee Harold T. McCormick ("Plaintiff/ McCormick").[1]  The jury rendered a verdict in favor of the plaintiff, and the district court entered judgment in accordance with the verdict on April 23, 2001.  The following issues are raised on appeal: (1) whether the district court erred in finding that the plaintiff was not a citizen of Alabama; (2) whether the district court erred in denying appellant's motion for judgment as a matter of law based upon the Alabama statute of limitations; and (3) whether the district court erred in its jury instruction on the Alabama statute of limitations.

After reviewing the record, the applicable law, and carefully considering the contentions raised, we affirm the judgment of the district court.

II.  BACKGROUND

In October 1992, plaintiff McCormick was hospitalized in Panama City, Florida, after suffering from an episode of sudden shortness of breath and hemorrhagic pneumonia.[2]  McCormick then flew to Birmingham, Alabama, and was placed under the care of Dr. Ronald Stroud, his personal physician.  Upon

---

[1] The district court dismissed the co-defendants, Dr. R. B. Kent, III, and Dr. Richard Stahl, upon a motion by the plaintiff, on February 30, 2000.

[2] Hemmoragic pneumonia is an infection that causes bleeding in the lungs.

examining McCormick, Dr. Stroud determined that McCormick was suffering from blood clots in his left leg. Due to McCormick's history of deep venous thrombosis and prior pulmonary embolisms[3] in the 1980's, Dr. Stroud, and surgeons Dr. Raleigh Kent and Dr. Richard Stahl, elected to have a Greenfield filter[4] placed in McCormick. The filter was inserted in order to trap blood clots traveling from the lower extremities to the lungs and to prevent future pulmonary embolisms from occurring.

On December 29, 1992, the plaintiff underwent surgery for the placement of the filter at Carraway Methodist Medical Center in Birmingham. The device was placed in the plaintiff by Dr. Kent and Dr. Stahl. At the time of deployment, Dr. Kent noticed that the filter moved "inferiorly slightly" during placement. In order to confirm that the device was properly placed, an x-ray was taken. Dr. Stahl then took the x-ray to the radiology department and asked Dr. Aderholt to review it. Dr. Aderholt informed Dr. Stahl that the filter was in an acceptable position. In accordance with hospital procedures, the x-ray was reviewed by another radiologist, Dr. Kenneth Vanexan, whom also stated in a written report that the filter was in an acceptable location.

---

[3] A pulmonary embolism is a blood clot that breaks loose and travels through the lungs and into the heart.

[4] A Greenfield filter is an umbrella shaped device that is inserted via a catheter and strategically placed below the renal veins inside the inferior vena cava. All the blood returning from the lower extremities first drains through the inferior vena cava.

In 1995, while in London, England, the plaintiff suffered from an infection resulting in pulmonary edema,[5] requiring hospitalization. One of the physicians informed McCormick that he believed the incident was the result of a pulmonary embolism. However, upon the plaintiff's return to the United States, Dr. Stroud opined that he had probably not suffered a pulmonary embolism.

On March 20, 1998, while playing golf, the plaintiff suffered another incident of shortness of breath and pulmonary edema. Dr. Stroud characterized the episode as flash pulmonary edema,[6] and treated McCormick with diuretics to help remove the fluid from his lungs. Dr. Stroud then transferred him to the intensive care unit. Upon transferring McCormick, Dr. Stroud requested a cardiologist consultation in order to determine the cause of the pulmonary edema. However, Dr. Stroud's final diagnosis was acute pulmonary edema of uncertain etiology.

Sometime later in 1998, the Greenfield filter occluded, causing the plaintiff's right leg to swell. On May 29, 1998, Dr. Stroud ordered a venagram[7] of plaintiff's leg and pelvic region, in order to determine the cause of the swelling. The venagram revealed that the filter was not in the inferior venal cava, where it

---

[5] Pulmonary edema is a condition in which the lungs fill with fluid.

[6] Dr. Stroud testified that flash pulmonary edema is almost instantaneous, occurring over a matter of minutes, versus the pulmonary edema McCormick experienced in London, which was gradual.

[7] A venagram is a specialized x-ray made with contrast dye.

should have been deployed, but instead in the right iliac vein. The positioning of the device in the right iliac vein meant that there was nothing preventing clots from causing a pulmonary embolism.

On May 29, 1998, a second filter was properly placed in McCormick; that is, in his inferior vena cava above the original Greenfield filter. Thereafter, in September 1998, Dr. Stroud approached Dr. Semba, a surgeon performing surgeries in California through the use of miniaturized tools placed in a catheter in order to dilate blood vessels and break through clots, and discussed McCormick's medical condition with him. In an effort to correct McCormick's deep venous thrombus condition, Dr. Semba placed a stint across the occluded vein and filter in order to provide blood flow. Following this procedure, the plaintiff's condition improved.

III. DISCUSSION

A. DIVERSITY JURISDICTION

The first issue on appeal is whether the lower court erred in determining that the plaintiff was not a citizen of Alabama for purposes of diversity jurisdiction. This Court reviews the district court's findings regarding domicile under a clearly erroneous standard. See Scoggins v. Pollock, 727 F.2d 1025, 1027 (11th Cir. 1984). We conclude that there is sufficient evidence in the record to support the district court's findings of diversity of citizenship.

Pursuant to 28 U.S.C. § 1332, plaintiff alleged diversity of citizenship as the basis of federal jurisdiction. See id. at 1026. The appellant counter argued that because both he and the plaintiff were citizens of Alabama, the district court lacked subject matter jurisdiction. We have held that the law is clear regarding a federal court's limited subject matter jurisdiction; specifically, we only have the authority to decide certain types of cases. See Smith v. GTE Corporation, 236 F.3d 1292, 1299 (11th Cir. 2001) (citing Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1260-61 (11th Cir. 2000)). Further, the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction. See Scoggins 727 F.2d at 1026.

Diversity jurisdiction exists over a controversy between citizens of different states. See 28 U.S.C. § 1332(a). Citizenship is equivalent to "domicile" for purposes of diversity jurisdiction. See Hendry v. Masonite Corp., 455 F.2d 955, 955 (5th Cir. 1972).[8] "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. . . .'" Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974), cert. denied, 419 U.S. 842, 95 S.Ct. 74, 42 L. Ed. 2d 70 (1974) (quoting Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954)). Furthermore, a

---

[8] This Court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to October 1, 1981. See Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

change of domicile requires "[a] concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely... ." Id.

In making its findings, the district court looked at several specific factors. McCormick was the majority owner and chief executive officer of Bay Point Yacht and Country Club in Panama City, Florida. McCormick owned additional real property in Panama City. McCormick had a Florida driver's license, and was registered to vote in Bay County, Florida. In addition, he only paid Florida income taxes. The district court found that the plaintiff had a clear intent of being a Florida resident, despite the fact that his personal physician was located in Birmingham and that he and his wife may have owned property in Alabama, Florida, and England.

In light of the foregoing, we find that the district court did not err in finding that the plaintiff is and was at the time of filing suit, a resident citizen of Florida. Because McCormick's citizenship is diverse from Aderholt's, the district court properly exercised subject-matter jurisdiction over this case.

B. STATUTE OF LIMITATIONS

The second issue on appeal is whether the lower court erred in denying Appellant's motion for judgment as a matter of law based upon the Alabama statute of limitations. We review the denial of a motion for judgment as a matter of law de novo, applying the same standard as the district court. Lambert v. Fulton

County, Georgia, 253 F.3d 588, 594 (11th Cir. 2001). In applying this standard,

this Court reviews the evidence in a light most favorable to the non-moving party,

with all reasonable inferences drawn in his favor. See id. Further, this Court will

not substitute its judgment for that of the jury, as long as the verdict is supported

by sufficient evidence. See id. We conclude that this issue was properly submitted

to the jury.[9]

The Alabama Medical Liability Act § 6-5-482(a), Ala. Code (1975), imposes

a limitations period on all actions against physicians, surgeons, dentists, medical

institutions, or other health care providers for negligence in the treatment of

patients.[10] The Supreme Court of Alabama specified in Mobile Infirmary v.

Delchamps, 642 So.2d 954, 958 (Ala. 1994), that the limitations period of § 6-5-

482 commences with the accrual of a cause of action. The court further stated that,

---

[9] The district court charged the jury in the alternative in the words of the Alabama statute. In order to find for the plaintiff on this issue, the jury was required to find that the suit was filed within two years of the legal injury or within six months of discovering facts which would lead to discovery of the wrongful conduct.

[10] Section 6-5-482(a) states:
"All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act except, that an error, mistake, act, omission, or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year after such date."

for purposes of § 6-5-482, a cause of action "accrues" when the act complained of results in legal injury to the plaintiff. Id. However, when the wrongful act or omission and the legal injury do not occur simultaneously, the cause of action accrues and the limitations period commences when the legal injury occurs. See id.

In Delchamps, the plaintiff had temporomandibular implants surgically placed in her jaw on December 5, 1985. See id. at 955. Plaintiff Delchamps alleged that these implants proximately caused severe bone degeneration in her temporomandibular joints. See id. The defendant argued that the plaintiff's claims accrued on December 5, 1985, when the implants were surgically placed in the plaintiff's jaw, and not, as plaintiff argued, on December 10, 1991, when she discovered the injury from X-rays. See id. The Supreme Court of Alabama rejected this argument and concluded that a jury could find that the plaintiff not only discovered her injury within the two years before suit was filed, but that her legal injury also occurred within that time-- perhaps, but not necessarily, at the time of her discovery. See id.

The Supreme Court of Alabama had stated earlier in Grabert v. Lightfoot, 571 So.2d 293, 294 (Ala. 1990), that a cause of action accrues when the act complained of results in injury to the plaintiff. This statement was, of course, predicated on the facts of that case. The plaintiff in Grabert was diagnosed as

having a hernia in the left groin area.  See id. at 293.  On May 1, 1987, Dr.

Lightfoot operated on Grabert, but was unable to locate or repair the hernia.  See

id.  The plaintiff's symptoms continued and in June 1987, Dr. Lightfoot again

informed the plaintiff that he did indeed have a hernia, and offered to perform

another operation at no charge.  See id.  The plaintiff declined his offer but did

have a Dr. Bourgeois perform the operation.  See id.  During the second operation

on June 26, 1987, Dr. Bourgeois located the hernia; however, the procedure left the

plaintiff impotent and unable to perform the type of work he had previously done.

See id.  Suit followed.

The defendant in Grabert argued that the limitations period began to run

when the plaintiff had his first operation on May 1, 1987, not on June 26, 1987, the

date of the second operation.  See id. at 294.  The court agreed with the defendant,

holding that because the plaintiff was damaged by the first operation, the plaintiff

suffered a legal injury on that date and the statute of limitations began to run at that

time.  The Grabert court, like the Delchamps court, held that the Alabama

limitations period began to run when the plaintiff suffers a legal injury.

Turning to the case at bar, the defendant argues that McCormick's claim is

barred by the statute of limitations because the act complained of took place on

December 29, 1992, but the complaint was not filed until October 29, 1998.  We

disagree.  On December 29, 1992, McCormick had an operation for the

deployment of a Greenfield filter. The evidence shows that the device was improperly placed in the right iliac vein. The evidence, however, also permits a factfinding that McCormick suffered no legal injury until March 20, 1998, and that no one knew the filter had been improperly placed until the venagram was performed on May 29, 1998.

Given the law of Alabama as stated in Delchamps, that the accrual for a medical malpractice action occurs when there is a legal injury, this issue was properly submitted to the jury. The record contains evidence from which the jury could have found that plaintiff first suffered a legal injury within two years prior to filing suit. While in December 1992, Dr. Aderholt breached his duty of care, the plaintiff did not experience legal injury until March 20, 1998. Therefore, the district court did not err in denying appellant's motion for judgment as a matter of law.

## C. JURY INSTRUCTIONS

The last issue on appeal is whether the district court's jury instruction regarding the Alabama statute of limitations was erroneous. This Court applies a deferential standard of review to a trial court's jury instructions. See Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir. 1998). If the trial judge's instructions accurately reflect the law, he or she is given wide discretion as to the style and wording employed in its instruction. See id. Further, under this

standard, we examine "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." Id. (citing Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir. 1997). We will only reverse the lower court because of an erroneous instruction if we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Id.

Appellant argues that the trial court erred in refusing to give a charge on the four year outside limit on the statute of limitations period. Section 6-5-482(a) states that, ". . .in no event may [an] action be commenced more than four years after such act. . . ," thus appearing to set an outside limit on the statute of limitations period. Appellant argues that the court's refusal to charge on the four year limitations period rendered the instructions erroneous and misleading, thus prejudicing the defendant.

We find that appellant's argument is without merit. The Alabama Supreme Court has treated Section 6-5-482(a) as a statute of limitations, and not a statute of repose. See Street v. City of Anniston, 381 So.2d 26, 30-31 (Ala. 1980)). As discussed in Delchamps, 642 So.2d at 958:

> The limitations period of § 6-5-482 commences with the accrual of a cause of action. Street v. City of Anniston, 381 So.2d 26 (Ala. 1980); Bowlin Horn v. Citizens Hosp., 425 So.2d 1065 (Ala. 1983); Ramey v. Guyton, 394 So.2d 2 (Ala. 1981). A cause of action "accrues"

under § 6-5-482 when the act complained of results in legal injury to the plaintiff. Grabert v. Lightfoot, 571 So.2d 293, 294 (Ala. 1990); Colburn v. Wilson, 570 So.2d 652, 654 (Ala. 1990). The statutory limitations period begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. Garrett v. Raytheon Co., 368 So.2d 516, 518 (Ala. 1979). When the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs. Moon v. Harco Drugs, Inc., 435 So.2d 218, 219 (Ala. 1983); Ramey v. Guyton, 394 So.2d 2, 4-5 (Ala. 1981).

When applying this legal principle to the facts, the Delchamps court concluded:

> Considering the type of personal injury alleged and the alleged cause of this injury, we must conclude that she may be able to establish that although the implants were placed in her jaw on December 5, 1985, she did not suffer legal injury until December 10, 1991, or some other time within two years of the filing of her complaint. Delchamps is entitled to present evidence establishing the time at which the bone degeneration began.

Id.

Consequently, we agree with the trial court that the four year period simply has no application. As stated by the district judge during the charge conference, if the statute was treated as a statute of repose, thereby making it an absolute bar for an injured plaintiff to recover damages after the four year period, it would violate Section 45 of the Alabama Constitution. This was clearly stated by the Alabama Supreme Court in Street and is obvious from the holding in Delchamps. See

Street, 381 So.2d at 31; see also Delchamps, 642 So.2d at 958 (wherein the implants were inserted on December 5, 1985, and suit was filed more than four years later on June 2, 1992).  The district court did not err in denying Aderholt's requested jury charge.

IV.  CONCLUSION

We AFFIRM the district court's rulings in all respects.

AFFIRMED.