[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13493
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-01309-WSD

WESTERN SURETY COMPANY,

Plaintiff - Appellee,

versus

MOONEY CONSTRUCTION, INC.,
TIMOTHY W. MOONEY,
DARCY D. MOONEY,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 28, 2014)

Before WILSON, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Appellants Mooney Construction, Timothy W. Mooney, and Darcy D. Mooney (collectively "Mooney") appeal the district court's decision to grant Western Surety Company's (Western) motion for summary judgment. On appeal, Mooney argues that the district court erred because it misapplied basic principles of Georgia law when it granted Western's motion for summary judgment. According to Mooney, Western acted in bad faith when Western asked the district court to award $1.8 million in collateral security, a figure that Mooney argues, is arbitrary and capricious. Also according to Mooney, Western provided no prima facie evidence of the extent of Mooney's liability for its collateral security. After review of the parties' briefs and the record on appeal, we affirm.

I.

On March 17, 2006, Western issued payment and performance bonds (Bonds) to Mooney to ensure Mooney's performance on construction projects for the City of Atlanta, the County of Gwinnett, and the Georgia State Financing and Investment Commission (GSFIC). The purpose of the Bonds was to make sure that the owner, for example, the City of Atlanta, received a completed project and that subcontractors and materialmen were paid for the materials and work they provided. As consideration for the Bonds, Mooney entered into a general agreement of indemnity (Indemnity Agreement) with Western. Under the terms of the Indemnity Agreement, Western could set a reserve for any loss it expected to

2

incur should Mooney default on any one of the projects, and could demand of Mooney and any other indemnitors that they post collateral with Western in the amount set as the reserve.  Specifically, the collateral security provision of the Indemnity Agreement read:

> Payment shall be made to [Western] by the Indemnitors as soon as liability exists or is asserted against [Western], whether or not [Western] shall have made any payment therefor.  Such payment shall be either equal to the larger of (a) the amount of any reserve set by [Western] or (b) such amount as [Western], in its sole judgment, shall deem sufficient to protect it from loss.  [Western] shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Indemnitors would be obligated to indemnify [Western] under the terms of this Agreement. If for any reason [Western] shall deem it necessary to increase a reserve to cover any possible liability or loss, the Indemnitors will deposit with [Western], immediately upon demand, a sum of money equal to any increase thereof as collateral security to [Western] for such liability or loss.

In February 2011, GSFIC notified Western that GSFIC had terminated Mooney for default on its construction project and that GSFIC had, at its own expense, completed substantial portions of the project.  GSFIC demanded that Western reimburse GSFIC for its construction-completion expenses, other fees, costs, and damages.  GSFIC subcontractors, material suppliers, and others also filed claims against Western under the Bonds.

On February 11, 2011, Western demanded that Mooney make certain collateral payments as required under the Indemnity Agreement.  Mooney refused, and on March 15, 2011, Western made a second demand that Mooney post

3

collateral pursuant to the terms of the Indemnity Agreement.  Mooney once again refused.  Western made a third demand on December 13, 2011, and for a third time Mooney declined to post collateral.

Western then filed suit in April 2012, and in January 2013 filed a motion for summary judgment, which the district court granted.  In its motion, Western sought to be repaid $905,911.30, the amount it had already paid out on the Bonds (Payments).  Western also sought to require Mooney to remit $1,852,628.70 as collateral (Collateral) as permitted by the terms of the Indemnity agreement.  Western anticipated this amount would be required to complete, investigate, and ultimately resolve the remaining claims filed against Western.  Thus, the total amount Western sought was $2,803,540.00, the aggregate of (1) the net losses resulting from claims and expenses incurred, and (2) the Collateral Western was permitted to demand under the Indemnity Agreement.  Mooney appealed, and now argues that the Collateral award was arbitrary and not based on any evidence in the records.

## II.

We first address the issue of jurisdiction.  To be appealable, an order must either be final or fall into a specific class of interlocutory orders that are made appealable by statute or jurisprudential exception.  28 USC §§ 1291, 1292; *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000).  "A

4

final decision is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *CSX Transp., Inc.*, 235 F.3d at 1327 (internal quotation marks omitted).  An order that adjudicates fewer than all claims against all the parties is not final and appealable absent certification by the district court under Federal Rule of Civil Procedure 54(b).  *Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012) (per curiam).

Here, the district court's July 1, 2013 order granted Western summary judgment and entered judgment against Mooney for $2,803,540, the full amount sought in Western's summary judgment motion.  This amount reflected the $950,911.30 in losses and expenses sustained by Western in connection with the bonds and the agreement, which included $132,554.92 in legal fees.  The court awarded Western its litigation expenses and attorneys' fees under the Indemnity Agreement.  Accordingly, since the order resolved all claims in the action and left nothing for the court to do but execute the judgment, it is final and appealable.  *See* 28 U.S.C. § 1291, *CSX Transp., Inc.*, 235 F.3d at 1327.

We have diversity jurisdiction "over a controversy between citizens of different states." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam) (citing 28 U.S.C. § 1332(a)).  A corporation is deemed a citizen of every state in which it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  Diversity jurisdiction exists here because, as

5

the record evidences, Western is a citizen of South Dakota and Illinois while

Mooney is a citizen of Georgia. *See* 28 U.S.C. § 1332(c)(1); *McCormick*, 293 F.3d

at 1257. In addition, the amount in controversy exceeds $75,000. *See* 28 U.S.C. §

1332 (a). Accordingly, we have jurisdiction to hear this appeal.

### III.

Turning to the merits, we review de novo the district court's decision to

grant of summary judgment. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th

Cir. 2009). Mooney disputes only the court's grant of summary judgment,

approving Western's demand of the Collateral. Mooney does not dispute that is

must reimburse Western for the Payments of $950,911.30. Mooney argues that the

district court erred in awarding the Collateral to Western because there is no

evidence in the record, nor did Western even establish satisfactory prima facie

evidence, to justify this figure.

Western argues that the Indemnity Agreement does not require Western to

provide its indemnitors with justifications for or explanations of its Collateral

requests. Rather, the Indemnity Agreement vests in Western the right, in its sole

judgment, to set a collateral amount and demand that amount from its indemnitors.

Under Georgia law, the ordinary rules of construction of a contract apply to

surety agreements. *Anderson v. U.S. Fidelity & Guar. Co.*, 600 S.E.2d 712, 715

(Ga. Ct. App. 2004). "[W]here a decision is left to the discretion of a designated

entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary or capricious so as to amount to an abuse of discretion." *Reliance Ins. Co. v. Romine*, 707 F. Supp. 550, 552 (S.D. Ga. 1989) (internal quotation marks omitted) *aff'd*, 888 F.2d 1344 (11th Cir. 1989) (per curiam).  Also pursuant to Georgia law, a court "will not nullify the validity of these provisions [in the Indemnity Agreement] in the absence of bad faith or an abuse of discretion on the part of plaintiff in the settlement of the claims at issue."  *Id.*

Here, Mooney offers no evidence that Western determined the Collateral amount in bad faith or that the figure is arbitrary and capricious.  Mooney instead offers conclusory allegations that Western failed to provide calculations as to how it arrived at the Collateral, something Western was not contractually obligated to do.  Per the terms of the Indemnity Agreement, Western would determine the amount of collateral in its discretion.  Evidence that Western did not wish to disclose its formulas for assessing risk and the need for collateral is insufficient, by itself, to support a reasonable inference of bad faith.  Accordingly, summary judgment was proper, and we affirm the district court's decision.

**AFFIRMED.**