[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13601

Non-Argument Calendar

_____

WASEEM DAKER,

Plaintiff-Appellant,

*versus*

JOYETTE M. HOLMES,
District Attorney,
D. VICTOR REYNOLDS,
former District Attorney,
CHRISTINA WILLOUGHBY,
Admin. Specialist,
AMELIA G. PRAY,
Assistant District Attorney, Cobb County District
Attorney's Office,

2                    Opinion of the Court                    20-13601

MICHAEL W. ALMAND,
Court Reporter, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-01232-WMR

_____

Before JORDAN, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Waseem Daker appeals the district court's order dismissing his complaint alleging violations of his First Amendment right of access to the courts as untimely and of Georgia's open records law for lack of subject matter jurisdiction.  We affirm.

## FACTUAL BACKGROUND

In November 1995, a Cobb County, Georgia grand jury indicted Daker for two counts of aggravated stalking.   On July 19, 1996, Daker appeared at a bond hearing before then-Cobb County Superior Court Chief Magistrate Judge Victor Reynolds, which was transcribed by court reporter Deborah Fedorchak.  After a jury found him guilty, Daker was sentenced to ten years'

imprisonment. Daker completed his sentence and was released from prison in October 2005.

In January 2010, Daker was again arrested in Cobb County, this time for malice murder and ten other felonies. In 2012, a jury convicted Daker on all counts and the trial court sentenced Daker to life plus ninety seven and a half years in prison.

Between 2010 and 2016, Daker sought a transcript of the bond hearing: he repeatedly wrote to Ms. Fedorchak asking for a transcript. Ms. Fedorchak did not respond.

In 2012, Daker moved for an out of time appeal and to correct the "void" sentence in his 1996 case, and for a new trial in his 2012 case. In January 2013, Magistrate Judge Reynolds became the Cobb County District Attorney and, in that role, opposed Daker's motions. In response, Daker moved to disqualify District Attorney Reynolds, arguing that Georgia Bar rules prohibited a lawyer from participating in a case in which he was previously a judge, as District Attorney Reynolds was attempting to do. To support his motion, he asked Ms. Fedorchak "multiple times" for a transcript of the July 19, 1996 hearing but she never responded. In August 2013, the Cobb County Superior Court denied both motions. The Georgia Supreme Court affirmed Daker's conviction and sentence—including the Superior Court's denial of his motion to recuse District Attorney Reynolds—thus ending the direct appeal in Daker's 2012 case on October 17, 2016. *See Daker v. State*, 792 S.E.2d 382 (Ga. 2016).

In January 2017, Daker filed state habeas petitions attacking both his 1996 and 2012 convictions and sentences. Daker did not challenge the denial of his motion to recuse District Attorney Reynolds in either petition. In support of his petitions and under the Georgia Open Records Act, Daker requested copies of files seized from his computer in the lead up to his 2012 trial. Between February 2017 and November 2019, Daker filed five such requests with the Cobb County District Attorney's Office, but only received one response, asking him to agree to pay the associated costs. The response did not include the estimated costs, and though Daker followed up as to what they would be, he never heard back.

Daker continued to ask Ms. Fedorchak for a transcript of his July 19, 1996 hearing before then-Magistrate Judge Reynolds. In addition to his multiple requests between 2010 and 2016, Daker asked Ms. Fedorchak again in September 2016 and in August 2017, to no avail. In November 2017, Daker sent Ms. Fedorchak a request for production—in his habeas cases—of any notes, transcripts, or recordings from the July 1996 hearing. On December 14, 2017, the Cobb County Attorney's Office responded on Ms. Fedorchak's behalf, objecting that the request was irrelevant, unduly burdensome, and overly broad. The County Attorney's Office said that, while Ms. Fedorchak had stenographic notes, "those notes are not legible to a member of the public. Therefore, production of the notes would be irrelevant." Further, it said, the notes likely contained records of other hearings and so would need to be converted to English, transcribed, and then redacted. "[B]ecause the

notes [are] more than 20 years old," it continued, "[Ms.] Fedorchak has no way to convert the notes into any transcript format." It concluded that doing so without compensation would be burdensome.

In January 2018, Daker responded that he was willing to pay. On February 28, 2018, the county replied that Ms. Fedorchak no longer had her notes. Daker says that either Ms. Fedorchak or a county attorney destroyed the notes to prevent him from having them.

Finally, Daker asked the Cobb County Court Reporter's Office for audio recordings related to his 2012 case thirteen times between August 2017 and June 2019. Daker received a single transcript and his requests were otherwise ignored or denied.

On August 26, 2018, a Georgia trial court denied both of Daker's habeas petitions. The Georgia Supreme Court reversed the decision as to Daker's petition in his 2012 case on the ground that he had not waived his right to appellate counsel. *Allen v. Daker*, 858 S.E.2d 731, 747 (Ga. 2021). It remanded Daker's 2012 case to the trial court for him to either file a motion for a new trial or new notice of appeal. *Id.*

## PROCEDURAL HISTORY

On January 21, 2020, Daker sued fourteen individuals and Cobb County in federal court. He alleged that he was a Florida resident and invoked federal question and diversity jurisdiction.

Daker asserted five counts against four Cobb County district attorneys who had denied his Georgia Open Records Act requests

for his computer files seized in connection with his 2012 case, alleging that their denial—or failure to respond—violated his First Amendment right of access to the courts as well as Georgia Code sections 50-18-70 and 51-1-1.   Daker also asserted five counts against Ms. Fedorchak and two Cobb County Attorneys for failing to respond or denying his Georgia Open Records Act requests for transcripts of his 1996 hearing before then-Magistrate Judge Reynolds and then destroying the stenographic notes, alleging that those acts violated his First Amendment right of access to the courts as well as Georgia Code sections 50-18-70 and 51-1-1.

And Daker asserted thirteen counts against seven other court reporters for denying or failing to respond to his requests for audio recordings related to his 2012 case, alleging that those acts violated his First Amendment right of access to the courts as well as Georgia Code sections 50-18-70 and 51-1-1.  Despite naming it as a defendant, Daker did not assert any claims against Cobb County, though he alleged the fourteen individual defendants "maintain[ed] a . . . culture and custom of obstruction of justice and concealment, destruction, and spoliation of evidence favorable for criminal defendants" as well as a custom of ignoring Georgia Open Records Act requests for records favorable to criminal defendants.

Though Daker paid the filing fee, a magistrate judge screened Daker's complaint because he was a prisoner suing the government.  *See* 28 U.S.C. § 1915A.  The magistrate judge concluded that Daker had misjoined the defendants.  The magistrate judge noted that Daker was suing four district attorneys for failing

to provide a copy of computer files related to his 2012 case, seven court reporters for failing to provide documentation for other hearings in his 2012 case, and an eighth court reporter and two county attorneys—not district attorneys—for refusing to provide and then destroying stenographic notes of a hearing in a separate case. This, the magistrate judge said, constituted misjoinder because the claims did not involve the same transaction or occurrence (or series of transactions and occurrences) or involve any question of law or fact common to all named defendants. The magistrate judge rejected Daker's argument that his claims were united by a Cobb County custom of ignoring open records requests. The magistrate judge then ordered Daker to refile his complaint as to a single set of defendants (and to open separate actions if he wished to pursue the claims against the other sets of defendants).

Daker refiled an amended complaint against only Ms. Fedorchak, the two county attorneys who he said destroyed the notes, and Cobb County. He reasserted the same five counts—four against Ms. Fedorchak under the First Amendment and the Georgia Open Records Act for denying his requests for the July 19, 1996 transcript and one against Ms. Fedorchak and the county attorneys for destroying the transcript notes. He again did not advance any claims against Cobb County.

Daker also objected to the magistrate judge's ruling that his claims were misjoined. He argued that all of the acts alleged were part of the same series of transactions and occurrences because they stemmed from the Cobb County custom of ignoring open

records requests from defendants. He also said that there were common questions of fact: whether the acts were part of the same custom and whether the denials violated his First Amendment right of access to the courts.

On July 1, 2020, the magistrate judge screened Daker's amended complaint and found that his first four First Amendment access to courts claims were barred by the statute of limitations. The magistrate judge explained that Daker made the last of the four requests in August 2017 and Daker would have had notice of the denials by "mid-September at the latest" and so his failure to sue within Georgia's two-year statute of limitations—or by September 2019—barred his claim.

The magistrate judge also concluded that Daker had failed to state a claim as to his fifth First Amendment access to courts claim because he had not explained how the lack of the July 1996 transcript prejudiced him in his 2017 state habeas petitions. As to Cobb County, the magistrate judge said, Daker's allegations that it had a custom or practice of denying constitutional rights were conclusory.

As to Daker's state law open records claims, the magistrate judge concluded that there wasn't diversity jurisdiction because Daker wasn't, as he claimed, a Florida citizen. The magistrate judge explained that Daker was instead a Georgia citizen, and because the defendants were all Georgia citizens, there wasn't complete diversity between the parties. To reach this conclusion, the magistrate judge cited a transcript of a bond hearing in Daker's

2010 criminal case where he presented evidence that he had strong (and long standing) ties to Georgia. The magistrate judge recommended that the district court find that it lacked diversity jurisdiction—and decline to exercise supplemental jurisdiction—over Daker's state law claims.

Daker objected to the magistrate judge's report and recommendation. First, he objected to the magistrate judge's order requiring that he replead his claims because they were misjoined. Second, Daker argued his amended complaint was not time-barred because his injury didn't accrue—and thus the statute of limitations didn't start running—until he was injured. That didn't happen, he said, until his state habeas petitions were denied in August 2018. Third, Daker objected to the magistrate judge's finding that he hadn't plausibly alleged a custom or policy of denying constitutional rights under *Monell* against Cobb County. Fourth, Daker contested his citizenship—he argued that while he may have resided in Georgia, he was and had always been a citizen of Florida.

At the same time, Daker moved for copies of the federal court records the magistrate judge "judicially noticed" in the report and recommendation. He also sought leave to amend and filed a proposed second amended complaint. His proposed second amended complaint alleged the same claims, but added more facts. The proposed second amended complaint added that Daker's 2015 motion to disqualify now-District Attorney Reynolds was denied after a hearing. Daker alleged that, at the hearing, District Attorney Reynolds denied receiving evidence at the July 19, 1996

hearing, and Daker could not impeach him because Ms. Fedorchak refused to produce the transcript. Not only were his motions for a new trial (and to disqualify District Attorney Reynolds) denied, Daker continued, but the lack of the transcript doomed his two state habeas petitions.

The district court overruled Daker's objections and dismissed his amended complaint. It agreed with the magistrate judge that the claims in Daker's original complaint were misjoined because they involved claims against different defendants for separate actions, and that, "while the claims might have questions of law that overlap, [Daker] ha[d] not established that there [was] a question of law common to all defendants." The district court also agreed that Daker's claim against Cobb County for having a custom of denying open records requests was conclusory.

Next, the district court assumed that the denial of a transcript could constitute an access to court claim. The problem, the district court said, was that Daker had not alleged that the denial had injured him because he had not shown that the lack of transcript had prevented him from making a nonfrivolous claim. As to his direct appeal, the district court found that Daker was aware of his injury when the Georgia Supreme Court affirmed the denial of his motion to disqualify District Attorney Reynolds in his direct appeal in his 2012 case on October 17, 2016. As to his habeas petitions, because Daker didn't raise a claim related to District Attorney Reynolds and his motion to disqualify in them, the denial of

the habeas petitions didn't injure him. Therefore, the district court concluded, Daker's first four claims were time-barred.

As to the destruction of the stenographic notes in 2018, the district court said that Daker had not stated a claim because he hadn't moved to disqualify District Attorney Reynolds or Cobb County since the notes were destroyed—in other words, he hadn't been injured by lack of the transcript because he hadn't needed it. And, the district court continued, Daker had filed so many fruitless challenges to his conviction that any future challenge would doubtless be frivolous or untimely and so Daker would not—could not—use the transcript in the future.

As to Daker's state law claims, the district court took judicial notice of another case Daker had filed in the Northern District of Georgia in which it had already found Daker was a Georgia citizen. *See Daker v. Redfin Corp.*, No. 1:20-cv-02561, ECF No. 24 at 5 (N.D. Ga. Sept. 1, 2020)*, vacated by Daker v. Redfin Corp.*, 2021 WL 5235102 (11th Cir. Nov. 10, 2021). Therefore, as to the state law claims, there was not complete diversity and so the district court lacked diversity jurisdiction. And it declined to exercise supplemental jurisdiction, dismissing the state law claims without prejudice.

The district court also denied Daker's motion for copies of the records cited by the magistrate judge because it did not rely on them and Daker was not entitled to them as a matter of law. Finally, the district court denied Daker's motion to amend his complaint because it concluded that amendment would be futile.

## STANDARD OF REVIEW

There are five standards of review governing Daker's appeal.

(1) We review an order severing defendants under rule 21 for an abuse of discretion. *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045 (11th Cir. 1986).

(2) We review de novo dismissals under section 1915A(b)(1) and rule 12(b)(6). *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). We review de novo the district court's interpretation and application of statutes of limitations. *Foudy v Miami-Dade Cnty.*, 823 F.3d 590, 592 (11th Cir. 2016).

(3) We review de novo "the denial of leave to amend by reason of futility because futility is a legal conclusion that the amended complaint would necessarily fail." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1328 (11th Cir. 2020).

(4) We review for an abuse of discretion a district court's decision to take judicial notice. *Bryant v. Ford*, 967 F3d 1272, 1275 (11th Cir. 2020).

(5) And we review de novo whether the district court properly interpreted and applied the provisions of 28 U.S.C. section 1332 in determining whether diversity jurisdiction exists. *Life of the S. Ins. Co. v. Carzell*, 851 F.3d 1341, 1343–44 (11th Cir. 2017). "Factual findings regarding the citizenship of a party are subject to a clearly erroneous standard of review." *Id.* at 1344.

## DISCUSSION

Daker appeals the dismissal of his original complaint, his First Amendment access to court claims, and his Georgia Open Records Act claims. First, he says that the district court wrongly severed the claims in his original complaint. Second, as to his First Amendment claims, he argues that the district court erred (1) in calculating the statute of limitations applicable to his first four claims; (2) in concluding that he had failed to state a claim against Ms. Fedorchak and the county attorneys for destroying the stenographic notes; and (3) in denying leave to amend as futile. Third, as to his state law claims, he objects (1) that the district court took judicial notice of another of his cases; and (2) that it concluded that he was a Georgia citizen.

### Original Complaint - Joinder

The district court affirmed the magistrate judge's order requiring Daker to divide his claims—against Ms. Fedorchak and the two county attorneys for denying and then destroying stenographic notes from his 1996 case, against two county attorneys for not producing copies of computer files from his 2012 case, and against seven court reporters for not producing audio recordings in his 2012 case—into separate lawsuits. Daker argues that the district court erred because his claims had common factual and legal predicates and undercut his attempt to assert a *Monell* custom-or-policy claim against Cobb County. We disagree.

Under Federal Rule of Civil Procedure 20, a plaintiff may join defendants to a single action only if both: "(A) any right to

relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" *and* "(B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Rule 21 adds that a court may drop a party "on its own initiative at any stage of the action and on such terms as are just." *Lampliter Dinner Theater, Inc.*, 792 F.2d at 1045 (citing Fed. R. Civ. P. 21).

As to the first rule 20 prong, we have used the scope of compulsory counterclaims in rule 13(a) to govern the meaning of "transaction or occurrence." *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (en banc). A "transaction or occurrence" may "comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* Accordingly, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* (internal citations omitted). For instance, "a pattern or practice of discrimination may describe such logically related events and satisfy the same transaction requirement." *Id.*

As to the second rule 20 prong, "[the rule] does not require that *all* questions of law and fact raised by the dispute be common, but only that *some* question of law or fact be common to all parties." *Id.*

Here, the district court did not abuse its discretion in requiring Daker to bring his claims in separate cases.  Daker sought relief from three different sets of defendants from three different county offices for their conduct regarding two different underlying cases. He wanted computer files for his 2012 case from the district attorney's office, audio recordings from seven different court reporters from his 2012 case, and a hearing transcript from a separate court reporter and two county attorneys for a different case fifteen years earlier.  In other words, the defendants were different, the underlying facts were different, the defendants' liability was independent, and the underlying habeas petitions were different.  In these circumstances, the district court did not abuse its discretion in ordering Daker to file his other claims related to his 2012 case in a separate lawsuit.

In response, Daker argues that his claims were part of the same transaction or occurrence because (1) all of the defendants worked for Cobb County or the Cobb County District Attorney's Office; (2) Cobb County maintained a custom of denying prisoner requests for information; (3) all the defendants denied his requests, thus raising (4) the common question whether their actions violated his rights.  But, while it may be true that all of these individuals allegedly violated his rights in the same way, giving rise to the same cause of action, the facts underlying the violations were different.  That the defendants merely worked for the same municipal government—in separate offices in separate roles at separate

times—does not create a common question of fact. Accordingly, the district court did not err in severing Daker's claims.

Daker also argues that forcing him to split his claims into multiple lawsuits undercut his ability to plausibly allege a *Monell* custom-or-policy claim against Cobb County. He doesn't contest the district court's decision that his amended complaint failed to state a claim against Cobb County, but only that its decision forcing him to sever his claims meant that his amended complaint would necessarily be insufficient. We disagree.

The district court's decision to sever was distinct from its decision on the merits of Daker's *Monell* custom-or-policy claim against Cobb County. Because Daker's claims against the three groups of defendants were not part of the same transaction or occurrence, the district court did not err in requiring Daker to bring the claims separately. But that decision did not preclude Daker from including the allegations—but not the counts or defendants—in his amended complaint. Thus, the district court's order requiring severance did not prevent Daker from stating a claim against Cobb County in his amended complaint.

### First Amendment Access to Court Claims

The district court dismissed Daker's first four First Amendment access to court claims as time-barred, his remaining claim for failure to state a claim, and denied Daker's motion to amend as futile. Daker appeals all three decisions.

Statute of Limitations

The district court dismissed Daker's first four counts as time-barred.  We agree.

"To dismiss a prisoner's complaint as time-barred prior to service, it must appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar."  *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (quotation marks omitted).  The length of the limitations period governing a section 1983 action is dictated by that which state law provides for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  The applicable statute of limitations for section 1983 claims in Georgia is two years.  *Leal*, 254 F.3d at 1279. But "[f]ederal law determines when a federal civil rights claim accrues."  *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996).  Generally, under federal law, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent to a person with reasonably prudent regard for his rights." *Id.* at 561–62.  Thus, "[p]laintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury."  *Id.* at 562.

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  An access to courts claim is "ancillary to the underlying claim," meaning that the plaintiff must identify a "nonfrivolous, arguable underlying claim." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  "An underlying cause of action, whether anticipated or lost, is an element that must be

described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* An "essential standing requirement" of the right is that the prison officials' actions "must have impeded the inmates' pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or a dismissal of a direct appeal, habeas petition, or civil rights case that results from the actions of prison officials." *Wilson v. Blankenship*, 163 F.3d 1284, 1290–91 (11th Cir. 1998). Thus, Daker's claims accrued when the defendants "impeded" his pursuit of a non-frivolous appeal, petition, or civil rights action.

The district court did not err in determining that Daker's first four access to courts claims were time-barred. Daker says that he wanted a transcript of a July 19, 1996 bond hearing to support his attempt to recuse District Attorney Reynolds and prevent him from opposing Daker's motions for (1) an out of time appeal and to correct a void sentence in his 1996 case; and (2) a new trial in his 2012 case.

The question, then, is when Daker knew that Ms. Fedorchak "impeded" his pursuit of his out-of-time appeal and for a new trial. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). Daker alleged that he asked Ms. Fedorchak for the transcript repeatedly between 2010 and 2016 (Count I), in 2015 (Count II), on September 21, 2016 (Count III), and on August 13, 2017 (Count IV). He also asked again on November 3, 2017 (Count V). Therefore, Daker knew (or should have known) that his first four requests had been

denied or ignored—and his claim had accrued—by November 3, 2017 when he asked for the final time. Because Daker did not sue until January 21, 2020—well after the November 3, 2019 date he needed to sue by in order to satisfy the two year statute of limitations—the district court did not err in finding his first four claims were time-barred.

In response, Daker argues that his injury did not accrue until his habeas petitions were denied in August 2018. But Daker didn't raise any claims related to his denied motions to recuse District Attorney Reynolds in his habeas petitions. Thus, the denial of his habeas petitions can't be the triggering event when his access to court claims accrued. In short, Daker's first four claims are time-barred.

### Failure to State a Claim

The district court dismissed Daker's fifth access to court claim because Daker had not alleged that he had raised an underlying cause of action that District Attorney Reynolds or the Cobb County District Attorney's Office should have been disqualified after Daker learned that the notes were destroyed.

We agree that Daker has failed to state a claim. To repeat, to state an access to courts claim, the plaintiff must plausibly allege that he has a "nonfrivolous, arguable underlying claim." *Christopher*, 536 U.S. at 415. But Daker didn't raise an underlying cause of action related to District Attorney Reynolds and Daker's motion to recuse him in the two denied habeas petitions. So the lack of the transcript didn't deprive Daker of a "nonfrivolous, arguable underlying claim." *Id.* Daker has not suffered any *past* injury because of

the destruction of the notes. And Daker has no future need for the transcript because District Attorney Reynolds will no longer oppose Daker's quest for release because District Attorney Reynolds left the Cobb County District Attorney's Office in 2019. *See* Georgia Bureau of Investigation, About Us, Victor Reynolds, Director of the Georgia Bureau of Investigation, https://gbi.georgia.gov/about-us/vic-reynolds (last accessed Nov. 10, 2021).

Accordingly, the district court did not err in concluding that Daker had failed to state a claim as to his fifth First Amendment access to courts claim.

## Futility

The district court denied Daker's motion for leave to file a second amended complaint because it found that the proposed second amended complaint suffered from the same problems as the amended complaint—it was untimely and failed to state a claim—and so amendment would be futile. Daker argues on appeal that the district court erred by dismissing his amended complaint without notice and without giving him leave to amend.

Leave to amend "should be freely given" if the "underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (quotation marks omitted). However, a court may deny leave to amend the complaint "when such amendment would be futile." *Id.* at 1263. An amendment is futile when the complaint as amended would still be subject to dismissal. *Id.* A district court errs when it dismisses an action sua sponte unless

amendment would be futile. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1238, 1248 (11th Cir. 2015).

Here, the district court did not abuse its discretion in denying Daker's motion for leave to amend. Daker's second amended complaint's first four counts were still time-barred. Therefore, they would still be subject to immediate dismissal. Amendment would therefore be futile. *Cf. Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) ("The lower court denied leave to amend on the ground that the newly-asserted claim was barred by the applicable statute of limitations and that allowing the amendment would, therefore, be futile. If correct, the district court's rationale would be sufficient to support a denial of leave to amend the complaint."). As to Daker's fifth claim, Daker's proposed second amended complaint still did not state a claim by explaining how the lack of a transcript had injured him or would in the future. The district court did not err in dismissing Daker's amended complaint or denying leave to amend because amendment would be futile. *Id.*

### *Georgia Open Records Act State Claims*

The district court judicially noticed its order in another of Daker's cases to conclude that Daker was a citizen of Georgia and so it lacked diversity jurisdiction over Daker's state law claims. Daker appeals both the district court's procedure in taking judicial notice and its conclusion that he was a citizen of Georgia.

### Judicial Notice

The magistrate judge cited the records in two of Daker's previous cases in recommending to the district court that Daker was a

Georgia, rather than a Florida, citizen, and that the district court therefore lacked diversity jurisdiction.  Daker objected and moved for copies of the records that the magistrate judge noticed.

While the district court agreed with the magistrate judge that Daker was a Georgia citizen, it didn't adopt the magistrate judge's report and recommendation—it instead adopted its findings and conclusions from a separate case, *Daker v. Redfin Corp.*, No. 1:20-cv-02561, ECF No. 24 at 5 (N.D. Ga. Sept. 1, 2020)*, vacated by Daker v. Redfin Corp.*, 2021 WL 5235102 (11th Cir. Nov. 10, 2021).  The district court also denied Daker's motion for copies of the records that the magistrate judge cited because the district court did not rely on them.

On appeal, Daker argues that the district court's procedure didn't comply with the procedure for judicial notice in prisoner cases we outlined in *Paez v. Secretary, Florida Department of Corrections*, 947 F.3d 649, 651 (11th Cir. 2020).  He also says that the district court erred in denying his motion for copies of the judicially noticed records.

Courts may judicially notice facts that are "not subject to reasonable dispute" if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While a court has "wide discretion" to take judicial notice, "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir.

1997)). This is because the "taking of judicial notice bypasses the safeguards which are involved with the process of proving facts by competent evidence in district court." *Paez*, 947 F.3d at 653 (quoting *Shahar*, 120 F.3d at 214). "In order to fulfill these safeguards, a party is entitled to an opportunity to be heard on the propriety of taking judicial notice," *Dippin' Dots, Inc.*, 369 F.3d at 1205, either before or after the court does so, Fed. R. Evid. 201(e).

Here, the district court did not abuse its discretion by taking judicial notice of its *Redfin* order. Daker could have disputed the taking of judicial notice by filing a motion afterwards but chose not to do so, instead immediately appealing. Daker therefore had the opportunity required by rule 201 to contest judicial notice after the fact, but did not do so.[1] Rule 201's requirement of an opportunity to be heard is thus satisfied. *See e.g.*, *Daker v. Alston & Bird LLP*, 2022 WL 1224140, at \*2 (11th Cir. Apr. 26, 2022) ("[W]e have held Rule 201 does not require a prior opportunity to be heard, and the district court heard and rejected Daker's challenge to its judicially-noticed facts when it denied his post-judgment motion to vacate.").

None of Daker's counterarguments are persuasive. First, while he contends that he requested an opportunity to be heard on the taking of judicial notice, he asked for a hearing on the *magistrate judge's* judicial notice. But the district court did not adopt the magistrate judge's reasoning, only the judge's conclusion. Daker's

---

[1] Even on appeal, Daker does not dispute the truth of the facts the district court relied on, only their legal sufficiency.

argument that he lacked the opportunity to object to the magistrate judge's recommendation is both wrong—he had the opportunity to object and did so—and inapposite—because the district court did not adopt the magistrate judge's reasoning.

Second, Daker complains that the district court denied his request for copies of the records.  The district court did not abuse its discretion in denying this request. The district court did not rely on records the magistrate judge cited, so Daker did not need copies to properly contest the district court's decision.  Nor was the district court *required* to provide them.  While we've said it is a "best practice" to do so, it is not an abuse of discretion not to provide the records where, as here, the district court didn't rely on them.  *Paez*, 947 F.3d at 653 ("We think the best practice would be to include copies of any judicially noticed records as part of the Order that relies upon them, so as to ensure the inmate receives them.").

### Diversity Jurisdiction

Daker argues that the district court erred in determining that he was a citizen of Georgia.  We disagree.

The district court found that Daker was a Georgia citizen by adopting its order in *Redfin*.  We later vacated the *Redfin* order. *See Daker v. Redfin Corp.*, 2021 WL 5235102 (11th Cir. Nov. 10, 2021).  But we didn't vacate the *Redfin* decision because it erred in determining that Daker was a Georgia (rather than a Florida) citizen. We vacated the district court's decision in *Redfin* because either way—whether Daker was a Florida or Georgia citizen—the district court had diversity jurisdiction between Daker and the

defendant, a Washington citizen. *Id.* In any event, the district court's determination that Daker was a Georgia citizen is supported by substantial evidence and is therefore not clearly erroneous. *Life of the S. Ins. Co.*, 851 F.3d at 1344 ("Factual findings regarding the citizenship of a party are subject to a clearly erroneous standard of review.").

A federal court must dismiss an action if it determines at any time that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). District courts have subject matter jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). For diversity jurisdiction cases involving a natural person, the plaintiff must establish the parties' citizenship or domicile—evidence of residence isn't enough. *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013). "It is the burden of the party seeking federal jurisdiction to demonstrate that diversity exists by a preponderance of the evidence." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011).

"A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (quotation marks omitted). A prisoner ordinarily has the same domicile he maintained before being imprisoned. *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002). A change of domicile requires both physical presence at the new

location and an intention to remain there indefinitely. *McCormick*, 293 F.3d at 1258.

We affirm the district court's decision because—even though *Redfin* was vacated—the record is clear that Daker is and remains a Georgia citizen. Between 1990 and 1995, and between 2005 and 2010, Daker lived, worked, and owned a home in Georgia.[2] He doesn't have—and hasn't had—a job, car, voter registration, membership in a social organization, driver's license, bank account, or utility payment in Florida in the thirty-one years since 1990. When Daker was arrested and imprisoned in 2010, he was a Georgia citizen. He has remained that way because, due to his incarceration, he cannot demonstrate the "physical presence" in Florida required to change his domicile. *McCormick*, 293 F.3d at 1258.

Daker objects, arguing that the district court failed to liberally construe his pro se amended complaint, refused to draw reasonable inferences in his favor, and held his pleading to a standard higher than either rule 8 or section 1915A requires.[3] But Daker forgets that he, as the "party commencing suit in federal court," bears the "burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079,

---

[2] He spent the intervening ten years in prison.

[3] Because the district court adopted only the magistrate judge's conclusion, not the judge's reasoning, we do not discuss Daker's arguments as to how the magistrate judge erred in determining his citizenship.

1085 (11th Cir. 2010).  The favorable inferences he relies on, in other words, are inapposite.  The district court amply described the evidence before it and its reasons for finding that Daker was a citizen of Georgia.  We can't say that the district court's finding was clearly erroneous.  *See McCormick*, 293 F.3d at 1257 ("This Court reviews the district court's findings regarding domicile under a clearly erroneous standard.").

Daker also generally argues that he never intended to remain indefinitely in Georgia and that he always meant to return to Florida.  But "[m]ere mental fixing of citizenship is not sufficient.  What is in another man's mind must be determined by what he does as well as by what he says." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).  "Words may be evidence of a man's intention" but "they cannot supply the fact of his domicile there." *Id.*  Because Daker has spent the entirety of his last ten free years in Georgia, and has no physical, financial, social, or professional ties to Florida, the district court did not clearly err in finding that Daker was a Georgia citizen and dismissing Daker's state law claims for lack of subject matter jurisdiction.

**AFFIRMED.**